EDWARD STENGER v. RICE BROS., Appellants.

Sales: ACTION FOR THE PRICE: EVIDENCE: INSTRUCTION.  In this action, against commission merchants, to recover the balance of the purchase price of a shipment of cattle, the plaintiff asked defendants by telegraph if they would honor a draft of a stated amount, being the amount of the purchase price, and they replied that they would honor a draft for the amount of the cattle on their arrival.  And it is held that this reply was ambiguous, and the question of whether defendants knew or should have known that plaintiff might construe the answer as a promise to pay the amount of the draft instead of the amount the cattle brought on the market was for the jury, and was improperly taken from the jury by an instruction basing plaintiff's right of recovery solely upon his understanding and reliance upon the answer as a promise to pay the draft on arrival of the cattle.

*Appeal from Woodbury District Court.*—HON. DAVID
MOULD, Judge.

WEDNESDAY, OCTOBER 26, 1910.

ACTION for balance of purchase price of cattle defendants are alleged to have agreed to pay.  From judgment therefor, they appeal.—*Reversed.*

*F. E. Gill,* for appellants.

*Shull, Farnsworth & Sammis,* for appellee.

LADD, J.—On May 8, 1908, at Hermosa, S. D., L.
H. Baumann purchased one hundred and seventy-six cattle of plaintiff at the agreed price of $9,328, and in payment thereof handed him a draft on Rice Bros. for $9,500. Plaintiff gave his check for the difference; but this has

been returned.    The cattle were shipped. to Rice Bros.,
a commission firm at Sioux City, and the net proceeds
of the sale, $8,340.91, remitted to the plaintiff.    This
action is to recover the difference between the purchase
price and the proceeds received, or $987.00, and it is
based on certain telegrams.    It seems that, after Baumann
had bargained for the cattle, he called at Pennington Coun-
ty Bank at Rapid City, S. D., and had its cashier prepare
the draft.    Subsequently the plaintiff had a conversation
with the cashier by telephone, and the latter sent to de-
fendants the following telegram: "Rapid City, S. D.,
May 8, 1908.    Rice Bros. Commission Company, Stock
Yards, Sioux City, Iowa.    Will you honor L. H. Bau-
mann draft on yourself $9,500.00 ?    Pennington County
Bank."

In response to this, defendants answered:    "Sioux
City, Iowa, May 8, 1908.    Pennington County Bank, Rapid
City, S. D.    Will honor draft for amount of cattle on
arrival of cattle.    Rice Bros."    The contents of these
telegrams were communicated by the bank to plaintiff, and
the evidence was such that the jury might have found
that in reliance thereon he delivered the cattle to Baumann.
As bearing somewhat on the understanding of the parties,
it may be added that on the following day plaintiff caused
to be transmitted to defendants this telegram:    "Hermosa,
S. D., May 9, 1908.    Rice Bros., Sioux City, Ia.    Will
you honor Baumann's draft for purchase price of cattle
shipped you ?    Answer once.    Ed. Stenger."    To this
response was made on the following day; but it did not
reach plaintiff until the morning after sent:    "Sioux City,
Ia., May 10, 1908.    Ed. Stenger, Hermosa, S. D.    Could
not pay draft before cattle arrived. Rice Bros."

Defendants were aware that Stenger's telegram related
to the draft mentioned in the bank's telegram.    On May
11, 1908, plaintiff telegraphed the brand inspector at Sioux
City not to release cattle until the draft was paid; but

the cattle had been disposed of before this telegram was received. A motion for a directed verdict after evidence in behalf of plaintiff had been adduced was overruled, as was also a like motion after all the evidence was in. The court held that defendants' telegram to the bank was not an acceptance of its proposition that Rice Bros. honor the draft and withdraw the cause of action based thereon from the jury. The second count proceeded on the theory that the Rice Bros. telegram constituted a counter proposition, and that plaintiff delivered the cattle to Baumann in reliance thereon, and the latter shipped them to defendants, thereby accepting the proposition, and that this constituted a contract. Whether plaintiff in delivering the cattle to Baumann relied on this telegram was submitted to the jury, and that body was further instructed that if "plaintiff had reason to believe that the draft for the purchase price of cattle would be honored by Rice Bros. upon the arrival of the cattle, and relying upon the representations in said telegram the plaintiff delivered possession of said cattle to L. H. Baumann to be shipped to Rice Bros., and that plaintiff would not have delivered possession of said cattle had the contents of said telegram not been communicated to him," the verdict should be for plaintiff unless his claim had been settled; but if "plaintiff in delivering possession was not misled by said telegram, and was not induced thereby to deliver possession of the cattle," the finding should be for defendants.

It will be observed that this instruction proceeds on the theory that the meaning of defendants' telegram was uncertain and ambiguous, but omitted to submit to the jury whether defendants knew, or ought to have known, that the sendee or other person entitled to rely thereon would understand it to promise the honoring of a draft for the price Baumann had agreed to pay. That the language, "will honor draft for amount of cattle on arrival of cattle," is ambiguous, there can be no doubt. The firm

of Rice Bros. was not engaged in buying or selling for itself, but was handling cattle solely on commission, as plaintiff well knew. Its employees knew nothing of the number or price of cattle bought by Baumann and might well have had in mind what the cattle would bring on the market at Sioux City, for payment was not to be made until their arrival there. For these reasons, defendants ought not to be conclusively charged with knowledge that the sendee or party entitled to rely on the telegram would understand therefrom a promise to pay the purchase price rather than the price received upon the sale of the cattle at their destination. On the other hand, defendants knew the telegram was for the benefit of a seller of cattle to Baumann. Such seller naturally would be concerned with the purchase price from him, rather than in what the cattle might bring on the market after shipment. Rice Bros. may have known this, and the jury might have concluded that the employees of the firm knew, or ought to have known, that the telegram would be understood as a promise to pay such purchase price as soon as the cattle arrived. The subsequent telegrams tended to confirm this view. Even though the employees of Rice Bros. testified that they intended payment merely of the amount received on the market at Sioux City, the plaintiff might have interpreted the telegram to promise honoring the draft for the purchase price, and, "where the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it." Section 4617, Code. From the situation of the parties and surrounding circumstances, the occasion of sending the telegram, and the apparent object to be served, it was for the jury to say whether defendants' employees knew, or in the exercise of ordinary prudence ought to have known, that the bank or persons entitled to rely thereon would construe the telegram as a proposition to honor a draft

for the purchase price of the cattle upon the arrival of the cattle at Sioux City. *Field v. Eastern Bldg. & Loan Ass'n,* 117 Iowa, 185; *Gillett v. Bank of America,* 160 N. Y. 549 (55 N. E. 292).

Because of the error in not submitting such issue to the jury, the judgment is *reversed.*