CEDAR RAPIDS NATIONAL BANK, Appellant, v. E. O. CARLSON, ANDREW HANSON, J. C. GROON and JOHN B. DIRKS.

**Evidence:** VARIANCE BY PAROL. Where an instrument is not relied upon as the basis of an action or defense, but is a mere collateral instrument of evidence, contradiction of its terms by parol is admissible, notwithstanding the parol evidence rule. Thus where a party relied upon a contract to show that certain notes were binding upon the makers though they did not contain the names of all who signed the contract, and also to rebut an inference that the notes were not to be delivered until a certain number of signatures were obtained, evidence that those signing the contract had been misled in doing so, without knowledge that the same was a contract, was admissible to destroy the probative effect of the instrument, although no fraud in procuring their signatures was alleged.

**Same.** Where an instrument does not specify the number of signers to be procured, nor the liability of each, evidence of an oral

agreement that the same was not to become binding until a specified number of signers was obtained, was not a variance of the instrument; and was provable by parol as a condition precedent to the effectiveness of the instrument.

**Explanatory evidence.** In a suit upon notes in which the plaintiff relied upon a contract by the makers and others for the purchase of a horse, and defendants alleged that there was an oral agreement that the payee was to secure the signatures of a certain number of solvent persons to the agreement of purchase, when the notes provided for in the contract should be executed and delivered, and also alleged that many of the signers were insolvent, evidence that one of the signatures had been erased was not erroneously admitted, where the instrument still contained the requisite number of names; as the same was simply explanatory of the fact that at one time it contained more names than when introduced in evidence.

**New trial:** MISCONDUCT: ARGUMENT: REVIEW. Upon refusal of the court to permit an amendment pleading a material alteration in a contract, consisting merely of a collateral instrument, argument of counsel to the jury that the alteration vitiated the contract was improper; but as the exception to the argument in this case was not ruled upon by the trial court no error in this respect was presented for review on appeal. And although such misconduct was made a ground of a motion for new trial and an exception taken to the overruling of the motion, still as no error in overruling the motion is relied on in argument such misconduct is not ground for reversal.

**Evidence:** EXAMINATION OF WITNESSES. Although the court may inadvertently strike out answers of a witness containing matter not vulnerable to the objection raised, still the complaining party should by further questions call for such answers as are not objectionable, to be heard on appeal.

**Same:** EXAMINATION BY THE COURT. The presiding judge may rightfully participate in the examination of witnesses, if by so doing he can expedite the trial or assist the witness; but to make a practice of thus interfering with the examination of witnesses is unwise.

**Same:** EXCLUSION OF EVIDENCE: HARMLESS ERROR. Where the court instructed the jury that pleadings in another case offered in evidence should not be considered, refusal to permit a witness to explain the cause for dismissal of such action was not prejudicial; as it will be presumed that the jury followed the court's instruction.

Negotiable instruments: DELIVERY: EVIDENCE. Where the evidence showed that the notes in suit were delivered to a third person to be held by him until the seller of property for which they were given had performed the conditions of sale, evidence of a voluntary payment by the seller of the third person's services, and acceptance by him, was not competent to show that the seller had performed his obligations and that defendant regarded the transaction as completed at that time.

Same: INSTRUCTIONS. Where the defense pleaded to a suit upon notes was an oral agreement that the notes were not to be delivered until a certain number of responsible persons had signed the same, and there was evidence of an oral and also a written agreement to that effect, but no complaint was made during the trial of a variance between the allegations and the proof, and the court correctly stated the issues and instructed on the burden of proof, failure to instruct on the oral agreement alone was not misleading.

Contracts: CONSTRUCTION: EVIDENCE. Where the evidence is conflicting as to the terms of an oral agreement and the language of a lost writing on the subject, it is competent to show the interpretation put upon the agreement by the parties themselves, and to take into consideration their understanding of the terms and effect thereof, in determining the real agreement; and it is proper for the court to instruct in accordance with the terms of the statute, that the sense is to prevail against either party to an agreement in which he had reason to suppose the other party understood it.

*Appeal from Linn District Court.*—HON. MILO P. SMITH, JUDGE.

SATURDAY, JUNE 8, 1912.

ACTION to recover the amount due on two promissory notes, dated December 15, 1903, each for $800, and payable July 1, 1905, and July 1, 1907 respectively to the order of Henry Lefebure signed by the four persons named as defendants in the title of the action, as above given, and others. Plaintiff alleged that it became the holder of said notes for value and in good faith, before maturity, without any notice of defenses thereto. The other signers of the

notes were named as defendants; but, not being served with notice of the action, they need not be enumerated. The four defendants who were served within the state answered, denying that plaintiff became the holder of the notes for value before maturity, and by way of defense to the notes, which are conceded to bear their signatures, alleged that neither of the notes sued on was ever delivered to the payee named therein, or to any other person for him, and further alleged that the notes were executed in connection with and as the result of an oral agreement betwen the payee, Lefebure, and the signers of the notes with reference to the purchase of a stallion by said defendants from said Lefebure, it being a part of such oral agreement that neither of said notes should be delivered to said Lefebure until the full number of twenty-four solvent and responsible persons living in the vicinity had signed said notes; that said Lefebure secured the signatures of twenty-five persons to a written agreement to purchase said stallion, but that many of said signers were not solvent and responsible, which fact the said Lefebure well knew; that when said Lefebure had obtained the signatures to the notes of said defendants and others, in all nineteen in number, said Lefebure and his agent, one Headley, designedly, falsely, and fraudulently represented to defendant Carlson, who was the custodian of the notes in behalf of the persons who had already signed the same, that the said Lefebure and said Headley desired to examine said notes in order to make a list of those persons who had contracted to purchase the stallion and had not yet signed the notes, and that when said notes were then shown upon said request the said Headley unlawfully, fraudulently, and without any authority from these defendants or other signers, stole said notes and absconded with them, and thereafter delivered them to Lefebure, who thereupon pretended to sell and transfer them to plaintiff. In reply, the plaintiff acknowledged that said Headley was agent for Lefebure in relation to the sale

of the stallion, and denied all other allegations of the answer. By way of cross-petition, the defendants, above referred to, alleged the fraud and misconduct of said Lefebure and his agent, Headley, as a cause of action against said Lefebure, asking that he be made a party defendant, and charging him with transferring the notes to plaintiff bank for the purpose of defeating the defense thereto, and asking judgment against him in any amount in which the said defendants should be held liable on the notes to the plaintiff. Thereupon Lefebure filed an answer to the cross-petition and further asked, by way of counterclaim, that he have judgment against the other defendants for the amount of their indebtedness on the notes for the benefit of the plaintiff in this action.

In his instructions to the jury, the court eliminated said Lefebure as a party from the case, and instructed solely with reference to the issues as between the plaintiff and the four defendants originally named, and the jury returned a verdict for said defendants. From a judgment on this verdict, both the plaintiff and said Lefebure, who had been made a defendant on the cross-petition of the answering defendants, appeal; the plaintiff assigning errors in the rendition of judgment against it, and Lefebure assigning error in the action of the court eliminating him from the case as a party. These two appeals are argued together; but in the view which we take of the case it will be unnecessary to consider the appeal of Lefebure, and in the opinion he will not be referred to as a defendant.—*Affirmed.*

*Deacon, Good, Sargent & Spangler,* and *Voris & Haas,* for appellant.

*Erickson & Stickney,* and *John Reed,* and *Tourtellot & Donnelly,* for appellees.

McCLAIN, C. J.—For the purpose of effecting the sale

of a stallion for $2,400, one Lefebure, who is the payee of the notes sued on in this action, through his regularly employed agent, Headley, and two or three local assistants secured for the purpose, attempted to find twenty-four persons of the vicinity in which the negotiations were carried on to obligate themselves, in writing, to join in the purchase of such horse. After these negotiations had been for some time in progress, those who had taken an interest in the matter met on December 15, 1903, at the house of defendant Carlson, who had been assisting in the promotion of the enterprise. Lefebure was present at this meeting, and there is evidence tending to show that the full number of persons required to join to effect the purchase at the rate of $100 each had not yet been secured. At this meeting arrangements were proposed for securing signatures to notes bearing that date, and it was stated that the notes (which were three in number, each for the sum of $800, although only two such notes were involved in this suit), signed by those who were present, should be left with Carlson until the purchase of the horse was finally concluded. There is evidence tending to show that, on objection being made by some to signing the notes until the full number of purchasers was secured, Lefebure executed and delivered to some one a written agreement or guaranty that the notes would remain in Carlson's possession until the transaction was completed. The loss of this instrument was accounted for; but its contents were very indefinitely shown. It appears further that the proposed purchasers entered their names in a little book on a paper contained therein. The names had been written in the book as the canvass progressed. On December 22d following, another meeting was called at Carlson's house, for the purpose of in some way completing the transaction, at which some, but not all, of the proposed purchasers were present. At this meeting, Lefebure was not present; but his general agent, Headley, delivered to Carlson the little red book

purporting to contain twenty-four signatures, and took from ·Carlson the notes, to which were affixed the signatures of only nineteen of the twenty-four persons whose names were in the ·book.

The theory of plaintiff is that those who had entered their names in the book had become bound as purchasers of the horse, and that the notes were binding obligations of the signers thereof, if Lefebure elected to accept the notes as they then were; while the theory of defendants is that the notes were not to be delivered until the names of twenty-four responsible persons were signed to them, and that Headley, having taken the notes from Carlson into his own hands for the ostensible purpose of copying off the names of the signers, wrongfully retained the notes in his possession and ·carried them away with him, with the result that no legal and effectual delivery of the notes was ever made; Carlson having authority to deliver the notes on this theory only when they bore the names of twenty-four signers.

As the paper contained in the little red book on which twenty-four persons had entered their names, on which paper was printed a blank contract, the blanks filled out by or for ,Lefebure, and his name attached to it as party of the first part, was received in evidence without objection and admitted on both sides to be material evidence in the case, we may here briefly describe it. It consists of a cover of about the usual size of a pocket memorandum book, hinged at the top, into which is held, by a rubber band, a piece of paper of approximately the same size as the cover when open; the included paper having a blank contract so printed upon it that, as the paper is folded in the book, the printing faces the back cover. The blank portion of the paper facing the front cover contains lines for signatures, and on these lines, as well as on the back portion of the sheet, which is entirely blank, the names of these defendants and others signed are in pencil. As the

exhibit is before us, one opening the book from the front would see only printed lines for signatures, and would not see the printed contract. As the sheet is held in the book only by a small rubber band, and might have been so placed as that the contract and first signatures would appear when the sheet was opened, we should not attach much importance to the particular adjustment of the sheet and the place of the signatures, were it not that many of the signers testify as witnesses that their signatures were entered without any knowledge on their part of any printed contract. The contract as printed with blanks filled in, so as to show the date to be November 18, 1903, and the obligation of the subscribers to be to purchase a Belgian stallion, named Bristol, for $2,400, payment to be made in cash upon delivery to any of the signers, or, at their option, by their joint and several negotiable note for said sum, payable in three annual installments, concludes with this sentence: "If any of the second parties shall refuse to sign said note, first party may, at his option, accept the note as signed without waiving any rights hereunder against said parties who shall refuse to sign such note, and may proceed to enforce collection against such parties who shall refuse to sign, without proceeding against or joining the parties who have signed."

By reference to the statement of the issues already given, it will appear that what purports to be a contract contained in the little red book cover is not pleaded or relied upon in the pleadings by either the plaintiff or the defendants, and that there are no allegations of fraud perpetrated by Lefebure or his agents upon the signers of such contract.

I. When the attention of witnesses testifying for defendant was called to the written contract contained in the little red book, which contract is referred to throughout the record as Exhibit C, they were allowed to testify, over appellant's objection, that it was so represented to them in

the book that they did not see the printing, and supposed

**1. EVIDENCE:
variance
by parol.**

they were entering their names on a blank piece of paper as persons who would become purchasers of the horse, if a sufficient number of purchasers was secured. The objection to such testimony was that it tended to show fraud in procuring signatures to Exhibit C, although no allegations of fraud with reference to this contract were found in the pleadings. Furthermore, the testimony of some of these same witnesses as to the terms on which they were solicited to become purchasers was admitted over the objection for plaintiff that the written contract was the best evidence of the agreement between the parties, and the testimony as to prior negotiations should be excluded. The contention for the appellant that the court erred in these rulings is without merit. Exhibit C was a material piece of evidence, and the circumstances under which it was signed might properly be testified to by those who signed it. But it was not the basis of the action. Fraud in procuring it was not relied upon in the pleadings; and there was no occasion to invoke the rule that fraud must be pleaded, or the other rule that oral evidence is not admissible to contradict the terms of a written instrument. It is well settled that the latter of these two rules has no application, where the instrument referred to in the testimony is not relied upon as the basis of the suit or defense, but is a mere collateral instrument of evidence. *Livingstone v. Stevens,* 122 Iowa, 62; *In re Assessment of Shields,* 134 Iowa, 559; *Aultman, etc., Co. v. Greenlee,* 134 Iowa, 368.

Exhibit C was relied upon by appellant to show that the notes in the suit were obligatory on the signers, although they did not bear the signatures of all the persons who had signed the contract, and as tending to rebut the evidence of an oral or written arrangement that the notes themselves should not be delivered until the names of twenty-four persons had been procured thereon. For the purpose

of destroying the probative effect of Exhibit C, it was certainly competent to introduce evidence that the signers had been misled in placing their names on a piece of paper, without knowledge that it purported to be a contract. If it was not in fact a contract binding upon the signers, then its probative effect for the purpose for which it was offered was destroyed. See, by way of illustration, *Sutton v. Weber,* 127 Iowa, 361; *Brennecke v. Heald,* 107 Iowa, 376; *Hallowell v. McLaughlin,* 136 Iowa, 279.

It is to be noticed that the contract, Exhibit C, does not specify the number of signers to be procured, nor the amount which each was to pay in the purchase of the horse. Therefore evidence of an oral agree-

2. SAME.

ment or understanding that the contract was not to be binding until twenty-four signatures were obtained would not be at variance with the terms of the written instrument; and, as a condition precedent to the taking effect of the contract, it might be shown in parol.

II. Exhibit C, as introduced in evidence, showed the names of twenty-four signers. The court permitted certain witnesses for the defendant, over objection by plain-

3. EXPLANATORY EVIDENCE.

tiff, to testify that at some time while the contract was being circulated for signatures the first name signed to it was crossed off in pencil and subsequently erased. There was evidence tending to show that on December 15th, when Lefebure had a conference with the signers at Carlson's house, the contract did not show twenty-four signers. It seems to be conceded for appellant that when the contract was, on December 22d, delivered to Carlson by Headley it had twenty-four signers; and that the erasure, above referred to, had already been made. Defendants pleaded in their answer that Lefebure and his agent, Headley, secured the signatures of twenty-five persons to the contract, but that many of them were not solvent and responsible; and this allegation was made in connection with another, that there was an oral agree-

ment between Lefebure and defendants that Lefebure should obtain and secure the signatures of twenty-four solvent and responsible persons as parties to purchase the stallion, and that, whenever twenty-four such persons should enter into an agreement for the purchase of the horse, then the notes provided for in the contract should be executed and delivered to Lefebure. It is evident that under these allegations the procuring of the signatures of twenty-five persons to the agreement would not render it invalid, and that the removal of one of the names signed to it, before the execution of the notes, would not affect their validity, provided the twenty-five signatures remaining were those of solvent and responsible parties. The sufficiency of these allegations, with others, to constitute a defense was not questioned at any stage of the proceedings by this appellant or by Lefebure, who was made defendant on cross-petition. The testimony of witnesses as to erasure of a name had no bearing on any issue in the case; but it seems to have been explanatory of other testimony tending to show that at one time there were twenty-five signatures; whereas the instrument as introduced in evidence showed only twenty-four signatures. The testimony introduced also explains, to some extent, the circumstances under which one signature had been erased; the explanation in itself tending to disprove any alteration of the contract after it had become complete and operative under the oral agreement that it should not take effect until twenty-four signatures of solvent and responsible persons were procured. We are fully satisfied that there was no error in the admission of this evidence.

But during the opening argument for the defendants (the court having directed that defendants should open and close) counsel for Lefebure protested against statements of counsel for defendant, making the argument that the erasure of the name on the contract vitiated the entire con-

4. NEW TRIAL: misconduct: argument: review.

tract and made it null and void, contending that such statement was against any claim made by defendants, or any issue in the case. Apparently without any application to the court for any ruling or order, and without any action of the court in the matter, counsel for defendants proceeded in his argument to say that the erasure of the name invalidated the contract and the notes in suit executed in connection therewith. At the conclusion of this portion of counsel's argument, an exception was noted; but no application for any order or ruling was made to the court, and the court took no action. In making such statement, counsel evidently ignored entirely the issue on which the case was being presented to the jury. Counsel for defendants had, after the close of the testimony and apparently before the opening argument, asked leave to amend their answer, so as to plead a material alteration in the contract by the erasure of a signature, and alleging that by reason of such alteration the notes sued on become void and of no effect; but the court had refused to permit such amendment to be made. We are satisfied, therefore, that the argument complained of was improper.

But no question with reference to such improper argument is presented for our determination on this appeal. In law cases, this is a court for the correction of errors committed by the trial court, *Schulte v. Chicago, M. & St. P. R. Co.*, 124 Iowa, 191; and no error of the trial court in this connection is presented to us, or even suggested.

An exception to argument of counsel preserves no question for our consideration. "An exception is an objection taken to a decision of the court or person acting as the court on a matter of law." Code, section 3749. Misconduct of counsel for the prevailing party is a ground for new trial under Code, section 3755, and the misconduct complained of was in this case urged as a ground for new trial, and an exception to the overruling of the motion for a new trial was properly preserved; but no error in the

overruling of such motion is relied on in argument. In the cases cited for appellant in regard to misconduct of counsel, it is not suggested that this court may reverse on that ground, without some erroneous ruling of the trial court being brought to its attention in a proper manner.

III.  Many errors are assigned on the action of the court in overruling objections to questions asked of wit-nesses calling for a conclusion, and in striking out answers of witnesses as conclusions, when portions of the answer in each case were proper. We certainly ought not to be asked to review in detail these various disconnected and incidental rulings, which, as we examine the record, appear not to have been in any way prejudicial to the appellant in the final disposi-tion of the case. Some discretion must be allowed to the trial court in rulings of this character. If the court inad-vertently, during the course of the examination of a wit-ness, strikes out an answer which contains some matter not vulnerable to the objection raised by the motion to strike, counsel may easily, and in fairness to the court should, by further question call for such answer as is not objection-able. It is not desirable that a trial should be conducted on the theory of a sparring match between counsel and court as to which may be able to score a point.

5. EVIDENCE: examination of witnesses.

Under the assignment that "the court committed sundry errors in the admission and rejection of testimony," with reference to at least forty different pages of the abstract, counsel call attention in argument to a great number of disconnected rulings relating to the admission or exclusion of evidence. Many of these involve to ques-tions that were rendered wholly immaterial in the subse-quent progress of the case. We have examined counsel's argument under this heading without being able to discover any erroneous rulings which, under the record, could possibly have prejudiced the appellant. We are unwilling to extend this opinion for the purpose of pointing out

wherein each ruling was either correct or, if erroneous, not prejudicial.

In this connection, also, we may notice the complaint of counsel in another division of their argument that the presiding judge became unusually active in the cross-examination of witnesses, and in striking out evidence of witnesses without motion of counsel.

**6. SAME: examination by the court.**

As a practice, it is, of course, unwise for the trial judge to interfere with the examination of witnesses; but, on the other hand, he has a perfect right to do so if he can thereby expedite the trial or assist the witness in giving his testimony and elicit the facts. It does not appear that the rulings of the court complained of in this connection were erroneous; and an examination of the record satisfies us that the trial judge did not do anything calculated to prejudice the jury as against the appellant. We must therefore refrain from an elaborate discussion of the rulings referred to in this connection.

IV. Certain exhibits, consisting of the pleadings in an action brought in South Dakota against other defendants on one of the three notes, signed by these defendants and others, were admitted in evidence, over objections for the plaintiff, as a part of the cross-examination of Lefebure as a witness.

**7. SAME: exclusion of evidence: harmless error.**

Thereupon counsel for plaintiff recalled a witness to explain the occasion for the dismissal of that action, and the court refused to allow such explanation to be made. However erroneous these rulings may have been, they could have had no effect on the result of the case; for during the argument of counsel for defendant, when he attempted to refer to the final disposition of that suit, the court instructed the jury that the matter should not be considered. Counsel for appellant admit that the admission of the exhibits could not have been prejudicial, unless the jury inferred therefrom that in such action the plaintiff was unsuccessful. It must be presumed that the jury observed the injunction

of the court and gave no consideration to the result of that suit.   Therefore no prejudice resulted.

V.   On cross-examination of defendant Carlson as a witness, plaintiff attempted to show that on December 19th (that is, before the notes were taken from him by Lefebure's agent, Headley) Lefebure in person, had a settlement with Carlson for his services in promoting the negotiations; and they now contend that if this testimony had been admitted it would have tended to show that Carlson regarded the transaction as completed on that day and recognized Lefebure's right to have the notes.   But, so far as the record indicates, the testimony would have been simply that Lefebure on that day paid Carlson for his services.   Certainly a voluntary payment of money to Carlson for services and the . acceptance of payment by him would not constitute an admission on his part that the terms of the contract between Lefebure and the defendants had been fully performed and complied with.   It is not suggested that Lefebure made such acknowledgement on the part of Carlson a condition of the settlement.   If Lefebure saw fit to waive any further obligations on Carlson's part and pay him for his services, although the transaction was not fully completed, Carlson's acceptance of the money would not involve any admission on his part as against himself and his codefendants.

8. NEGOTIABLE INSTRUMENTS: delivery: evidence.

VI.   The trial court failed to give an instruction asked for plaintiff, to the effect that, under the allegation of an oral agreement between defendants and Lefebure that none of the notes should be delivered until the full number of twenty-four solvent and responsible farmers living in the vicinity had signed them, the burden was on defendants to prove the contract as alleged; and, if they should find from the evidence that there was a failure so to do, the issue should be determined for the plaintiff.   The contention now made is that, if the jurors believed that the agree-

9. SAME: instructions.

ment to this effect was in writing, and not oral, they should, under the instruction, have found the issue in favor of the plaintiff, because in that event the defendants would have failed to prove the agreement as alleged. Some of the evidence for the defendants tended to show an oral agreement; while there was other evidence that some written memorandum was given by Lefebure to some of the defendants to the same effect. The court correctly stated the issue to the jury and instructed as to the burden of proof. We can not see how the jury could have been misled in its duty by a failure to give such an instruction as was asked and refused. There was no complaint during the trial of the case in regard to any variance between the allegations and the proof; and we think it would have been error to inject any such question into the instructions after the parties had tried the case on the simple question as to whether the agreement made between Lefebure and defendants on the 15th of December was that the notes should be delivered when twenty-four signatures thereto had been obtained, as contended by defendants, or whether the notes should be delivered when twenty-four signatures as to the contract had been obtained, as contended by the plaintiff.

VII. As applicable to the controversy between defendants and Lefebure as to whether the understanding and agreement on December 15th was that Lefebure should procure the names of twenty-four signers to the notes, in order to make them valid and binding, the court instructed the jury in accordance with the provisions of Code, section 4617, to the effect that, when the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other party understood it. It is now contended that the section referred to announces the rule for the construction of a contract the terms of which are conceded; while the dispute in this case is not over the mean-

10. CONTRACTS: construction: evidence.

ing of terms conceded to have been used, but as to what the terms of the agreement in fact were. The statutory provision has, it is true, no application in the construction of plain and unambiguous terms in a contract. *Peterson v. Modern Brotherhood,* 125 Iowa, 562; *Inman Mfg. Co. v. American Cereal Co.,* 133 Iowa, 71; *Capital City Carriage Co. v. Moody,* 135 Iowa, 444. But in the case before us there was conflict in the evidence as to the terms of the oral agreement, and also as to the language used in the written agreement or guaranty, which had been lost. As to each of these matters, it was competent to show the situation of the parties, the subject matter of the controversy, and the interpretation put on the contract by the parties, for the purpose of determining what the agreement really was; and therefore the understanding of the defendants as to the terms and the effect of the contract might be taken into account in determining what the propositions were to which defendants assented. *Thompson v. Locke,* 65 Iowa, 429; *Lull v. Anamosa Nat. Bank,* 110 Iowa, 537; *Field v. Eastern Building & Loan Ass'n,* 117 Iowa, 185; *Stenger v. Rice,* 149 Iowa, 100. The court did not err, therefore in the giving of this instruction. The judgment is,— *Affirmed.*