## FULTON R. GORDON, Inc., v. SCHRAM et al.

### No. 316.

Municipal Court of Appeals for the District of Columbia.

Argued Oct. 8, 1945.

Decided Nov. 19, 1945.

Rehearing Denied Nov. 30, 1945.

Marcus Borchardt, of Washington, D. C., for appellant.

Louis Rothschild, of Washington, D. C., for appellees.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

CAYTON, Associate Judge.

Appellees (plaintiffs below) sued Fulton R. Gordon, Inc., a corporation, and Fulton R. Gordon, individually, for double the amount of rent allegedly collected in excess of the ceiling fixed by the District of Columbia Emergency Rent Act, Code 1940, § 45—1610. The trial court directed a verdict in favor of Fulton R. Gordon and against the corporate defendant in the sum of $3,038.[1] The corporation appeals.

Plaintiffs alleged that on March 1, 1943 they leased from defendant Gordon, acting as agent for the corporation, a dwelling house, for the term of one year at $200 per month; that on March 5, 1944 they entered into a new lease for the term ending July 15, 1944 at the same amount (less a $5-per-month credit allowed for the non-use of a garage); that on the statutory freeze date of January 1, 1941 the rent for

---

[1] The Code section referred to gives the Municipal Court exclusive jurisdiction in all such cases, regardless of the amount involved.

the premises was $107 per month, which automatically became the maximum rent ceiling; that they paid and defendants collected $1,519 in excess of the legal rent ceiling. Defendants admitted that the corporation owned the premises and that defendant Gordon acted as its agent; but they claimed that the furnishings were the property of Mrs. Dillon, a former tenant; that plaintiffs leased these furnishings from Mrs. Dillon, defendant Gordon acting as agent in collecting rentals thereon; that in both transactions Gordon was agent for the corporation as owner of the premises, and agent for Mrs. Dillon as owner of the personal property.

The evidence showed that Mrs. Dillon had rented the property in its unfurnished state at $107 per month and later wished to move, leave her furniture on the premises and obtain a tenant for the property as a furnished dwelling; that she obtained the owner's consent to this arrangement and inserted an advertisement in a local newspaper; that in response thereto Mrs. Schram (one of the plaintiffs) agreed to rent the house, furnished, for $200 per month, and made a deposit of $200 with Mrs. Dillon; that on March 1, 1943 at the office of defendant Gordon a lease was signed wherein Gordon was named as lessor, Mrs. Schram as lessee and at the foot of the instrument were affixed the signatures of the lessor and lessee, and also that of Mrs. Dillon; that the lease described the property demised as premises "5312—28th Street, N. W. and furnishings, as per list of furniture which has been signed and approved between Mrs. Schram and Mrs. Dillon." Together with the lease there was offered in evidence a three-page list of furniture also dated March 1, 1943 and bearing the signatures of Mrs. Dillon and Mrs. Schram. The renewal lease of March 5, 1944 contains the same description of the property, to which is added "with the understanding that Mrs. Dillon is to take out the rug in the living room and put in another to take its place."

By his testimony Mr. Gordon attempted to establish the defense that he was acting as dual agent and that the lease had been executed by him as agent of the owner of the house, and as agent of Mrs. Dillon, the owner of the furniture. The court ruled the evidence inadmissible, because it covered an arrangement made out of plaintiffs' presence. The defense then

attempted to show that the monthly rent was collected by Gordon and the manner in which he remitted it. This evidence was also excluded, the court holding that it was an attempt to vary the contents of the lease by parol evidence. These rulings seemingly furnished the pattern for others having the same general effect. Thus we find that the trial judge rejected evidence as to the ownership of the furniture; as to the preliminary agreements and discussions as to payments for the house and furniture; as to Gordon's employment as agent for Mrs. Dillon; as to whether Gordon was to transmit monthly payments to Mrs. Dillon; and as to whether Mrs. Dillon received any payments for the use of the furniture after the lease was executed. In short, the trial judge drew the curtain on every attempt to show the true relationship of the three parties, what the monthly payments covered, and who received them. We think the rulings were erroneous.

If the landlord had rented the premises to plaintiffs furnished, then proof of the ownership of the furniture would probably be irrelevant; for a landlord may not increase the rent without prior approval of the Rent Administrator.[2] But if plaintiffs were renting only the unfurnished premises from the landlord, and renting the furniture from a third person, the landlord would have a valid defense against a claim of violation of the Rent Act (assuming of course that the arrangement was a bona fide one and not intended as an evasion of the Act). This was the defense which was advanced, but which was ruled out because the trial court held that parol testimony could not be admitted to vary the terms of the lease. We think the evidence was clearly admissible.

In the first place, it was necessary to admit parol testimony to explain two items appearing on the face of the lease itself. The lease refers to a list of furniture agreed upon by plaintiff and Mrs. Dillon. The fact that this list, which is incorporated into the lease, is signed by a third person, would justify some explanation. Furthermore, as we have said, Mrs. Dillon signed the first of the two leases. That fact alone would call for explanation, for parol testimony is admissible to explain the relationships of the parties, where such is not clearly set out in the document itself.[3]

[2] See Gould v. Delsnider, D.C.Mun.App., 42 A.2d 140.

[3] Martin v. Jablonski, 253 Mass. 451, 457, 149 N.E. 156; Williams v. Jones,

More important is the fact that this was not a suit on the lease itself, but strictly a statutory cause of action. The issue was whether the landlord had received rent in excess of the rent ceiling. In this case the lease was collateral to that issue. It was offered merely as evidence that defendants contracted for rent in excess of the legal ceiling. And where a writing is collateral to the issue, where it is offered as evidence of some fact in issue, it may be varied by parol testimony.[4]

But the most objectionable feature of the judge's rulings,—and probably the most damaging—is that defendants' proffered evidence covered facts which were necessary to a just determination of the case, and which could not be proved except by evidence extrinsic to the lease. As Wigmore has put it:

"There is no magic in the writing itself. It hangs in mid-air, incapable of self-support, until some foundation of other facts has been built for it." Wigmore on Evidence, 3d Ed., Vol. 9, p. 5, Sec. 2400.

And the issue in this case was not as to the writing, but as to the foundation on which it was laid, the transactions which led up to and followed it, and—even more important—what happened to the money which was paid under it. Plaintiffs showed that though the monthly rent ceiling on the premises was $107, they turned over some $200 per month to defendant Gordon. Then by showing his relationship to the defendant company, which owned the premises, plaintiffs made out a prima facie case of violation of the Rent Act.

Certainly the defense had the right to rebut this testimony by showing that Gordon had acted not for one but for two principals, that these principals had not secretly joined forces to effect an evasion of the Rent Act, but had dealt with plaintiffs openly and fairly; one principal renting his premises and the other renting her furniture. This, as our United States Court of Appeals has held in a very recent case [5] would only be placing the lease in its factual setting, thereby explaining its terms, or applying it to its proper object and subject matter, and would not violate the parol evidence rule.

Judgment against Fulton R. Gordon, Inc., reversed, with instructions to award a new trial.

The CHIEF JUDGE sat during the argument of this case and agreed in the result reached in this opinion, but died before the opinion was completed.

175 Wis. 380, 185 N.W. 231; Lancaster v. Stanfield, 191 N.C. 340, 132 S.E. 21; Brink v. Shaffer, 306 Pa. 386, 159 A. 719; Shepherd v. Mott, Tex.Civ.App., 166 S.W. 128.

4 Clifford v. Baessman, 41 Wis. 597; Noble v. Epperly, 6 Ind. 468; Badger v. Jones, 12 Pick. 371, 29 Mass. 371; Honore v. Lemm, 181 Cal. 420, 184 P. 664; Kelly v. United Cigar Stores, Sup., 170 N.Y.S. 933; Cedar Rapids Nat. Bank v. Carlson, 156 Iowa 343, 136 N.W. 659.

An analogous situation arises in a suit by a borrower to recover a penalty for usury. Such cause of action is statutory and not on the contract. The contract is merely evidence of the facts from which the cause of action arises. Russ v. Motor Finance Co., Tex.Civ.App., 55 S.W.2d 645. And the contract, being collateral to the issue, may be varied by parol evidence. Knighton v. Des Portes Mercantile Co., 119 S.C. 340, 112 S.E. 343.

5 Fox v. Johnson & Wimsatt, 75 U.S. App.D.C. 211, 127 F.2d 729.