**Robert Ray MILLS, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 83–1656.**

Supreme Court of Iowa.

March 19, 1986.

Charles L. Harrington, Appellate Defender, and Deborah A. Goins, Asst. Appellate Defender, for appellant.

Thomas J. Miller, Atty. Gen., Pamela Greenman Dahl, Asst. Atty. Gen., James A. Smith, Co. Atty., and Harlan Lemon, Asst. Co. Atty., for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, SCHULTZ, WOLLE, and LAVORATO, JJ.

UHLENHOPP, Justice.

This further review of a court of appeals decision primarily involves the extent to which a trial judge may properly interrogate witnesses. *See* Iowa R. of Evid. 614(b).

I. The Polk County Attorney charged Robert Ray Mills with false use of a financial instrument in violation of section 715.6 of the Iowa Code of 1979. The minutes of testimony stated that a check for $200 was made out to cash with a notation on the bottom, "John McDermott", and that defendant represented himself as John McDermott when he presented the check at a bank in exchange for traveler's checks. The minutes did not state that the instrument was altered.

The criminal charge was tried to the court. The evidence before the court, which by agreement consisted of the minutes attached to the charge and Mills' testimony, left the record unclear as to the contents of the check at the time it was presented to the bank. If it was made out to cash and was negotiated without endorsement, then, according to Mills' contention, it was bearer paper and could not constitute the foundation for a criminal charge under section 715.6 by virtue of the holding in *State v. Sanders,* 309 N.W.2d 144 (Iowa Ct.App.1981).

Mills' testimony did not clear up this question. The check was from California, and the banker, Mr. Rasley, checked there to verify that the check was good. Mills testified:

> Q. [Mr. Rigg, Mills' attorney] After he did that then what happened? A. He asked me how much I would like to make it out for and I first said $500 and then he said, "How about two hundred?" and I said, "That's fine." And he said, "Would you like to have cash? And I said, "No, I would like to have it converted into traveler's checks," and he said, "That's fine." And then he followed me up to the counter and he informed the teller that—when banks okay a check, if a check needs to be okayed by a bank officer, they'll put their initials—they'll

put their initials at one corner of the check and most usually all bank officers—all of the tellers in the bank usually know each person's individual signature and they proceeded—this Mr. Rasley informed Allison Edwards that he had countersigned a check, that the check was okay to be cashed, and that I would like to have ten $20 traveler's checks.

Perhaps aware of the legal problems in this state of the record, the trial court stated without objection by Mr. Rigg:

The Court: Let me make sure I understand Mr. Mills' answer.

Q. [The Court] The checks—did you just cash one check with Mr. Rasley? A. Yes.

Q. That was in an amount of $200? A. Yes.

Q. Was the check—I guess I'm trying to figure out who finished completing the check. Did you fill in the name John McDermott or was that already filled in? A. That was blank at the time. When I was sitting in front of Mr. Rasley while he got on the phone to this bank in California, I filled in my name—the alias name I was using and the amount $200.

Q. I hadn't heard any information if you had done that. So while Mr. Rasley was verifying the fact that the check was good and was okay to cash it from the California bank you filled out the check made payable to the order of John McDermott which was the alias name or fictitious name you were using? A. Yes.

Q. And then if I understand what happened, Mr. Rasley went up to the teller to get this check cashed but instead of giving you $200 cash you instead asked for ten $20 traveler's checks? A. Yes.

Q. And that was given to you by the teller, is that correct? A. Yes.

The Court: Proceed, Mr. Rigg.

At the conclusion of the trial the court found Mills guilty and, in due course, passed sentence.

II. Mills appealed and asserted as one ground for reversal that his trial attorney was incompetent in failing to object to the trial court's interrogation of him. The court of appeals remanded for postconviction proceedings on the question of incompetency of counsel. After trial on such an application, the present trial court denied the application, and Mills again appealed. The court of appeals reversed on this ground relying on *State v. Willet*, 305 N.W.2d 454 (Iowa 1981). The court held "that it is an abuse of discretion for a trial court to elicit the elements necessary to establish the State's case." Further:

We do not suggest that the trial court intended to aid the prosecution in this manner. As in *Willet*, it is likely that the court was merely attempting to clarify evidence and supplement its notes. The fact remains, however, that the court went beyond this intended purpose and elicited testimony that was not only damaging, but *essential* to the conviction. We simply cannot endorse this practice. In fact, this court is seldom confronted with a fact situation where the prejudice is so evident. Absent the colloquy between the court and Mills, Mills could not have been convicted of false use of a financial instrument. Thus, had trial counsel lodged an objection, we can only conclude that a reasonable probability exists that the result of the proceeding would have been different.

Slip opinion, at 6.

III. Was Mr. Rigg incompetent in failing to object to the trial court's questions, or were those questions proper?

Rule 614(b) of the rules of evidence states:

When necessary in the interest of justice, the court may interrogate witnesses, whether called by itself or by a party.

*See* 81 Am.Jur.2d *Witnesses* §§ 419–421 (1976); 98 C.J.S. *Witnesses* §§ 347, 348 (1957). Among the Iowa decisions which deal with this question are *State v. Spiers*, 103 Iowa 711, 73 N.W. 343 (1897) (not error for court to interrogate where witnesses

evasive and prosecutor's questions not well calculated to develop facts); *Bartlett v. Falk*, 110 Iowa 346, 81 N.W. 602 (1900) (court may inquire about material matter if evidence is otherwise admissible); *Pothast v. Chicago, G.W.R.R.*, 110 Iowa 458, 81 N.W. 693 (1900) (court's questions proper where purpose was to make witness' meaning understood); *Rounds v. Alee*, 116 Iowa 345, 89 N.W. 1098 (1902) (proper question to bring out what was said rather than conclusions); *Cedar Rapids National Bank v. Carlson*, 156 Iowa 343, 136 N.W. 659 (1912) (judge may ask questions to elicit truth); *State v. Eggleston*, 201 Iowa 1, 206 N.W. 281 (1925) (no error in asking witnesses to describe taste and appearance of alleged alcoholic drink); *State v. Thornburgh*, 220 N.W.2d 579 (Iowa 1974) (court should avoid extreme use of power to question witnesses); *State v. Cuevas*, 288 N.W.2d 525 (Iowa 1980) (court interrogated to untangle confused evidence on issue of time—no error). We stated in the case cited by the court of appeals, *State v. Willet*, 305 N.W.2d 454, at 457:

Although unnecessary to the disposition of the case, we must comment on the manner in which the evidence of defendant's age was introduced at trial. Willet's age appears in the record only once. He told the court his age in response to the court's question after Willet had stepped down from the witness stand and while his counsel was absent. Apparently the trial court was attempting to supplement notes it had taken during Willet's testimony rather than establish the State's case. As it turned out, this was the evidence upon which the trial court found a violation of section 709.4(1) "by virtue of section 709.-4(5)."

We have recognized that a trial court may question witnesses. *State v. Cuevas*, 288 N.W.2d 525, 532–33 (Iowa 1980). By examining witnesses, however, "the court becomes vulnerable to a multiplicity of criticisms; bias, prejudice or advocacy are some of those." *Id.* This case is an example of the dangers inherent in trial court examination of witnesses.

Here the court, in the absence of counsel, elicited from defendant an essential element of third-degree sexual abuse under section 709.4(5)—defendant's age. While it is unnecessary for us to decide the consequences of this exchange, it illustrates why this court does "not encourage judges to enter the fray with their own interrogation of witnesses." *Id.*

The absence of counsel in *Willet* when the judge interrogated demonstrates the necessity of impartiality by a judge. An analysis of the authority of a judge to interrogate witnesses is found in *McCormick on Evidence* § 8, 12–13 (2nd ed. 1972):

Under the Anglo-American adversary trial system, the parties and their counsel have the primary responsibility for finding, selecting, and presenting the evidence. However, our system of party-investigation and party-presentation has some limitations. It is a means to the end of disclosing truth and administering justice; and for reaching this end the judge may exercise various powers.

Prominent among these powers is his power to call and question witnesses.

The judge in his discretion may examine any witness to bring out needed facts which have not been elicited by the parties. Also, it is sometimes said that the judge may have a duty to question witnesses, although the exercise of such a duty does not appear to have been enforced by any appellate court decisions.

In those states—the great majority—in which the judge does not have power to comment on the weight of the evidence, the judge's questioning in jury cases must be cautiously guarded so as not to constitute an implied comment. Thus, if the judge uses leading questions, suggesting the desired answer, the questions may often strongly imply that the desired answer is the truth, and thus may offend the rule against comment. Subject to the limitation that a leading question may constitute prohibited comment, it has been held that the policy against leading questions by counsel, namely,

that of avoiding false testimony elicited by partisan suggestion, has no application in general to judges, whose office is to be impartial. This reasoning seems somewhat questionable. Also, questions which are aimed at discrediting or impeaching the witness, though allowable for counsel, when asked by the judge may often—not always—intimate the judge's belief that the witness has been lying, and thus be an implied comment on the weight of his testimony.

 IV. We return to our governing rule of evidence 614(b): the court may interrogate "[w]hen necessary in the interests of justice". This quoted clause contains two elements: if "necessary", in the interests of "justice". As to the first element, interrogation by the judge in this case was perhaps not yet "necessary" when he asked the questions. Frequently if counsel are permitted to examine and cross-examine in their own way, they deal with the issue in question when they reach it in their examinations. In this case Mr. Rigg or the prosecutor might have thus clarified this testimony in due course. We see no harm, however, in the judge's asking the questions when he did; presumably Mills' answers would have been the same had the judge asked the questions later.

We also hold that the judge was within his discretion in asking the questions in the interests of "justice". The legal issue was whether the check was a bearer instrument or payable to order. If it was in fact bearer paper, perhaps the judge would have acquitted Mills under the *Sanders* case. If however it was in fact payable to the order of McDermott, as Mills testified he filled in the check, the judge might find Mills guilty. The record was obscure on this point, and the judge could bring out the fact; otherwise justice might have miscarried.

 A trial is not a game; it is a serious quest for the truth. Rigg was not incompetent in not objecting to the judge's questions.

 V. Mills did not establish prejudice with respect to two other claims of incompetency he makes: failure to object to remarks of the prosecutor in opening statement and failure to move for directed verdict. *Strickland v. Washington*, 466 U.S. 668, ——, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 698, *rehearing denied*, —— U.S. ——, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984).

DECISION OF COURT OF APPEALS VACATED;

JUDGMENT OF DISTRICT COURT AFFIRMED.