STATE of Iowa, Plaintiff-Appellee,

v.

Roosevelt MATLOCK,
Defendant-Appellant.

No. 85–717.

Court of Appeals of Iowa.

March 31, 1986.

Charles Harrington, Appellate Defender, and John P. Messina, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., and Rebecca L. Claypool, Asst. Atty. Gen., and Mitchell Greene, Asst. Black Hawk Co. Atty., for plaintiff-appellee.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ., but considered en banc.

SACKETT, Judge.

Defendant was accused of raping his girl friend's daughter. There were no witnesses to the alleged rape. Defendant sought to present an alibi defense. The credibility of the victim versus the credibility of defendant's alibi was a major issue in the cause. Defendant claims the time of the alleged assault was extremely important to his defense.

Waterloo Police Investigator Larrabee stated in his police report he was first notified of the incident at 2:30 p.m. However, he later testified it was a typographical error and he was notified at 3:30 p.m. Defendant's attorney asked Larrabee a series of questions about the time frame in which he was notified.

During the course of the questioning Judge Stigler made the following comment:

COURT: Okay. It's a little bit off dead center perhaps. I think it would assist in one, Officer O'Connor testified that he arrived at 205 Walnut at 3:39 and that he did a cursory interview of the claimed victim, the claimed victim's mother and also the upstairs neighbor and that they then went to the hospital and arrived at the hospital at approximately 3:50 p.m. The argument as to who could have done what and who arrived at what point in time probably would be better addressed to the jury at time of closing summation rather than to examine the witness to express opinions on things that he probably doesn't have any personal knowledge of. Even as an investigating officer a certain amount of timing is going to be nothing more than supposition; so if you want to ask him about the times on the record, please do so; but to simply establish arbitrary times that are not secured by previous testimony really doesn't support anything other than supposition.

Defendant's attorney then asked to be heard outside the presence of the jury.

COURT: I presume the purpose of this being off—outside the record of the—outside the hearing of the jury at this point is because of my recent interruption of Mr. Briner's presentation. I'm fully cognizant of the fact that a trial judge has an obligation to be fair and impartial and not intercede in the parties' presentation of evidence. I'm also fully

cognizant of the fact that the parties have an obligation to argue from the facts established in the record and not to attempt to create time zones that are not supported by the evidence.

The defense in this has made much of mistaken time.... In this instance this witness is being asked to yield results of his investigation as to placing a time sequence on the claimed events, the claimed sexual abuse. Again, you had free leeway to do whatever you think is proper; but in the doing of it, Mr. Briner, you have to be governed by the state of record. Am I correct or incorrect that Officer O'Connor testified that he arrived at 3:39?

MR. BRINER: My recollection is that's correct.

COURT: And am I also correct in—

MR. BRINER: 3:36 if I remember.

COURT: 3:36. My recollection is 3:39; but whatever the record says establishes what his testimony is. The notification of this officer at 3:30 or so, that being his testimony, can come to pass from a number of ways. It could have come from O'Connor. It could have come from the dispatcher. It could have come in any fashion available to the police department. To then ask the officer to establish certain time sequences as to when the event must have occurred is proper, and I'm not arguing that it isn't. I'm simply saying that in asking the officer to peg back to the correct time of the alleged event, one has to keep in mind of proper times and not simply assign arbitrary time limits to what you would have the jury accept as being the point.

Having said that, I yield the floor to you to make your record.

MR. BRINER: .... I think what happened now in the presence of the jury is a totally different thing. The court characterized not only just here but previously in the presence of the jury, characterized by selection of time as totally arbitrary. It seems to me a clear unmistakable prejudice premonition to the jury. For the sake of confusing the record, the court further instructed the jury, or at least in the presence of the jury, that the correct times of the reference were those supplied by Officer O'Connor. I note initially the times about which I'm asking Officer Larrabee are those which Officer Larabee provided. Those aren't in any sense arbitrarily selected.

I note I did offer Officer Larrabee the courtesy of not attempting to fully stick him with the times that were in his official reports which were prepared in written form and the accuracy of which he has, as I understood his testimony at the previous trial, previously defended; nonetheless, it's clear by now he figured out that those reports were off by an hour. He corrected those. I didn't make any great matter of those to make sure that we did not get licked on those previously mistaken reports when he thought the crime occurred. I asked him to reconstruct from his recollection of the times when he thought the assault could have taken place, when he thought Rita Henderson left the apartment and when he first received notice.

It seems to me that for the court to mischaracterize that as an arbitrary selection of times for the purposes of generating confusion, has simply totally deprived us of the powerful defense that because of an altogether sloppy investigation and reconstruction of the incident, it simply is not possible for the jury to be confident beyond a reasonable doubt that the conclusions of the investigating officers were correct.

Given that, I don't see how we can proceed and expect a fair verdict, and I move the court to declare a mistrial.

COURT: The motion for a mistrial is going to be denied at this point. In addition, perhaps we can keep this thing along the lines of Rules of Evidence. It's none of my business if the State wants to do it; but basically, the majority of everything this witness has testified to recently has been nothing more than revelations of conversations with other individuals; and as such, unless you can pigeon hole it within one of the

exceptions for the hearsay rule, what he's been testifying to is basically hearsay. In essence, his statement that Rita Henderson told him as part of his investigation that she and Mr. Matlock left at 2:10 as having him testify, forget it.

Defendant contends on appeal the trial court erred in overruling his mistrial motions based upon improper judicial comment on the evidence. He also contends the trial court comments the testimony being elicited was subject to a hearsay objection were improper.

A trial judge has the duty to control and conduct its court in an orderly, dignified and proper manner. Occasions will arise when a trial judge is constrained to intervene on its own volition to stay the pursuit of a patently irrelevant line of inquiry, particularly when it may obfuscate the issue and mislead the jury, to act to overt unnecessary repetition and to take reasonable measures to ensure the evidence is intelligently presented to the jury. Yet, the trial court should not intervene without cause to do so. There may be a greater risk of prejudice from overintervention than from underintervention. Counsel should be given reasonable latitude to employ their selected strategies and tactics in an unhurried manner. *See State v. Cuevas*, 288 N.W.2d 525, 531 (Iowa 1980).

Patience and gravity of hearing is an essential part of justice; and an overspeaking judge is no well-tuned cymbal. It is no grace to a judge first to find that which he might have heard in due time from the bar; or to show quickness of concert in cutting off evidence or counsel too short, or to prevent information by questions, thought pertinent. *State v. Glanton*, 231 N.W.2d 31, 35 (Iowa 1975) (quoting "Of Judicature," Sir Francis Bacon).

▮ We agree with defendant the trial court's remarks in the jury's presence tended to undermine defendant's attempt to inquire as to the credibility of the police investigator.

▮ We further find the trial court's remarks that the testimony given was hearsay might be inferred as a direction to the county attorney to make an objection.

It is ordinarily a dangerous practice for a presiding judge to equalize what he perceives to be disparity in the trial ability of opposing counsel. Such practice is apt to proceed from disparity in the rightness of one side or the other, rather than the preparation or ability of counsel. It is often difficult for the presiding judge to distinguish exactly where the one disparity begins and the other ends. *State v. Droste*, 232 N.W.2d 483, 491 (Iowa 1975).

We fail to find defendant has shown prejudice.

▮ The defendant called Larrabee as a surrebutal witness and asked questions about the afternoon of the incident. Before he testified Judge Stigler made the following statement:

> COURT: Ladies and gentlemen of the jury, at the time that Officer Larrabee initially testified Mr. Briner wanted to inquire as to certain matters that I would not let him inquire into. You should be of the knowledge that what Mr. Briner was attempting to do was not improper, in fact, it was very proper; and I am now about to allow him to make the inquiry that he desired to make at that time.

The trial judge instructed the jury his previous statements may have been in error, and defense counsel's questioning had been appropriate. Defense counsel did question Officer Larrabee concerning the timeframe at issue and consequently had the opportunity to show what he wanted through Larrabee. We find defendant was not prejudiced by the trial court's remark and the denial of the motion for a mistrial.

▮ Furthermore, the trial court's remarks that testimony defendant was attempting to elicit was hearsay were made in court chambers. The supreme court has determined where suggestions made by the court to the county attorney as to how to proceed took place in chamber rather than in the presence of the jury it was doubtful

whether court's conduct was prejudicial. *See State v. Droste*, 232 N.W.2d 483, 490 (Iowa 1975)

We fail to find the defendant was prejudiced by the court's remarks. We affirm his conviction.

AFFIRMED.

All Judges concur except SCHLEGEL, J., who dissents.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

The majority duly chastens the trial judge for conduct in his comments on the evidence sought to be solicited by counsel for the defendant. However, having so spoken, the majority excuses the conduct by holding the defendant has failed to show prejudice.

As stated in defendant's brief: "It is fair to say, however, that no advocative conduct is more damaging to the fairness of the criminal trial than judicial comment on the quality, sufficiency or credibility of evidence in the case. The citations indicated give ample support for the showing of prejudice caused by the improper comments of the court here. The court's comments could be taken no other way than to disparage defendant's theory of defense. When the result is a diminution of the fairness of the trial, no further prejudice need be shown."

The admonition of *State v. Cuevas*, 288 N.W.2d 525, 531 (Iowa 1980), should not be lessened by our tacit approval of the court's apparent advocacy in this case. Certainly, even the recent case of *Mills v. State*, 383 N.W.2d 574 (1986) cannot be understood to lessen the importance of that principle. In *Mills*, the court held that counsel was not ineffective for failing to object to the court's questioning of the defendant to clarify the record. It does not alter the rule that judges are not encouraged to enter the fray on behalf of either party.

The trial court in this case demonstrated his impatience with defense counsel, and his concern for the inclusion of evidence that he felt should be objected to. The record shows that there is a strong inference of bias on the part of the trial judge. This is intolerable. I would reverse the trial court's refusal to declare a mistrial. It is unfortunate that a new trial is required under these circumstances, since apparently the defendant has now been tried for the second time, and the victim has been required to relive the incident in court twice before. None of these misfortunes, however, can justify excusing the demonstration of bias in front of the jury, and the implication of bias in the instructions to the prosecutor, which destroy the fairness of the trial. If a judge cannot maintain an impartial attitude even in the trial of defendants charged with outrageous and heinous crimes, his danger to a system of justice is immeasurable.

I would reverse.