**STATE of Iowa, Petitioner,**

v.

**The Honorable Luther GLANTON, Judge of the Des Moines Municipal Court, Respondent.**

**No. 56503.**

Supreme Court of Iowa.

June 25, 1975.

Richard C. Turner, Atty. Gen., and Raymond W. Sullins, Asst. Atty. Gen., for petitioner.

Naomi S. Mercer, Des Moines, for respondent.

Heard before MOORE, C. J., and MASON, REES, HARRIS and McCORMICK, JJ.

HARRIS, Justice.

Respondent presided as judge of the Des Moines municipal court in the trial of City of Des Moines v. Shirley Dee Steve. That case was a prosecution under a municipal ordinance proscribing the making of false police reports. A violation of the ordinance is a misdemeanor. After the prosecution completed its attempted showing, the case was dismissed because of insufficiency of the evidence.

We granted a writ of certiorari to test the State's claim respondent illegally suppressed evidence offered by the prosecution and abused his discretion by assuming the role of advocate for the defense. We find the claims of the State are well taken and sustain the writ but do not remand.

I. A court issuing a writ of certiorari has a responsibility to determine

whether the writ is allowable even though the question is not raised by the litigants. Kommelter v. District Court, 225 Iowa 273, 280 N.W. 511 (1938). The acts complained of occurred during trial on February 19, 1973. We issued the writ of certiorari July 3, 1973. The time for a direct appeal by the State is 60 days. § 793.2, The Code. The time for petitioning for the issuance of a writ of certiorari was changed, effective July 1, 1973. Prior to July 1, 1973 the writ could be issued within six months of the act complained of. Effective July 1, 1973 the writ could be issued only within 30 days. Chapter 316, Acts of the 65th G.A.

■■ Under rule 352, Rules of Civil Procedure, it is not fatal that a case is brought to us by certiorari rather than direct appeal or vice versa. The rule provides we treat the case as if the proper form of review had been sought. But rule 352 is not appropriate to extend the time allowed for an appeal where it differs, as it formerly did, from the time in which certiorari might be sought. Notwithstanding these difficulties, we believe in this case we should review the acts complained of. The State concedes the original defendant cannot again be tried by reason of former jeopardy. This review was sought on a theory similar to that defined in § 793.20 by which we are obliged to point out error on a direct appeal by the State but cannot increase punishment. In sustaining a writ of certiorari we are not bound to remand for further action by the tribunal reviewed. Watson v. Charlton, 243 Iowa 80, 50 N.W.2d 605 (1951). Taken together, the rather peculiar circumstances call for a review for the benefit of bench and bar.

II. The State first complains of respondent's act in excluding prosecution evidence of statements defendant made to investigating officers. We gather from the scant record someone called the Des Moines police department concerning an accident. Several policemen were sent to investigate and some of them visited with the original defendant whose statements to them were offered at trial but excluded. The ground for exclusion was obscure. Objections for want of proper foundation were sustained on a number of occasions. The prosecuting attorney objected and said, "I don't see it. He had conversation with this defendant." The court replied, "Yes, and there's certain things a police officer must do before he can engage in a conversation with the defendant."

Similar evidence was again excluded and at a later point, the trial court explained, "As I understand it, no matter what the charge, before a police officer can question a defendant, he must advise him of certain rights; not the Miranda rule, but certain rights." When pressed by the prosecutor for an explanation the court replied:

"THE COURT: Mr. Sarcone, I can't tell you in the middle of the case, but after the case is over, I'll be happy to tell you.

"MR. SARCONE: I would like to see a case * * *.

"THE COURT: The cases are so many, if I remind you, you'll remember."

Another reference to the basis for the exclusion appears in the record as follows:

"THE COURT: Mr. Sarcone, have you read these cases that the Supreme Court is not going to let a police officer come up with a uniform on and get all the information and then after he gets all the information, now you're under arrest. The Supreme Court has been specific, they won't allow it. A police officer would be smart enough to go out there and before they said anything about the arrest, get all the information and then say you're under arrest.

"MR. SARCONE: They've indicated there is no need to give a Miranda warning, which is the right to remain silent.

"THE COURT: We're not talking about a Miranda warning.

"MR. SARCONE: The same type of warning?

"THE COURT: That's not true, that's not true. Now on the first instance that's not true. That's not the law.

**34**

"MR. SARCONE: No further questions.

"THE COURT: We're not talking about the Miranda warning. Let me tip you off. No person accused of any offense would have to give a statement to a police officer that might tend to incriminate him without the police officer first advising him, 'If you make any statement it will be held against you.' You must do that in any case."

■ The warning described by the trial court is one of the requirements listed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. This warning is not required nor applicable to simple misdemeanors. State v. Gabrielson, 192 N.W.2d 792 (Iowa 1972).

■ The action of respondent in excluding the evidence is now defended on three bases. Language from the Miranda opinion is quoted to the effect evidence must be gathered against an accused, rather than from an accused, in the absence of warning and waiver. We believe, with the prosecutor, this is a part of the Miranda warning, inapplicable in misdemeanor cases. Annot., 25 A.L.R.3d 1076. The lack of waiver cannot be equated with involuntariness as defined in Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895. Secondly it is claimed a corpus delicti was not shown in the form of the initial false police report. Finally it is urged there was no showing of a necessary element of the offense described by the ordinance: the act was willful and malicious.

■ The last two bases have to do with the sufficiency, not admissibility of evidence. Any basis for the exclusion of the evidence by respondent is as obscure to us as it was to the prosecutor. Respondent should have explained his ruling, rather than await conclusion of trial. State v. Buckner, 214 N.W.2d 164 (Iowa 1974). Respondent acted illegally in denying the prosecution the opportunity to make its showing.

■ III. There is ample evidence to support the State's claim respondent assumed the partisan role of advocate for the defense.

The record became ludicrous, with the trial court directing defense counsel when and how to make objections. On occasion the presiding judge interposed defense objections of his own. Under these rather bizarre circumstances it should not be a cause of wonderment the court sustained most objections of defense counsel and all of its own. The transcript reveals the following startling examples.

An investigating officer had been called to testify of statements made by the original defendant as described in the previous division. After a question was propounded the following occurred:

"MR. DENEFE (defendant's counsel): I would object to that as hearsay, your Honor, what you told him.

"THE COURT: With the defendant?

"MR. DENEFE: Right.

"THE COURT: The proper foundation has not been laid but hearsay is not the right objection. It will be sustained however * * *.

"MR. DENEFE: I would object to that, your Honor, no proper foundation having been laid.

"THE COURT: Sustained."

On another occasion:

"MR. DENEFE: I would move to strike the answer as not being responsive.

"THE COURT: I'll sustain it this time, but next time I won't."

On another occasion:

"MR. DENEFE: Your Honor, I would object to any further questions along this line as being immaterial to this charge. The defendant is charged with—

"THE COURT: Not the proper foundation. Sustained. The next time you're that slow I'm going to let it in. You can't wait until the answer is in before you object. You have to object to the question put."

On still another occasion defendant's counsel objected to a pending question:

"MR. DENEFE: Object to that, your Honor, as being leading, calls for an opinion and conclusion of this witness.

"THE COURT: Not the proper foundation, sustained.

"MR. SARCONE (the prosecutor): Pardon me, your Honor.

"THE COURT: Not the proper foundation. Sustained."

On still another occasion the prosecutor was examining a witness:

"Q. What did you ask? A. I asked her who called the police and she said she did.

"THE COURT: Just a minute. Now that's when to object.

"MR. DENEFE: I object to that question. That question is not voluntary.

"THE COURT: And you ought to move the answer be stricken.

"MR. DENEFE: And move the court to strike that answer.

"THE COURT: Sustained."

Finally the prosecution surrendered the witness for cross-examination:

"THE COURT: You may cross-examine.

"MR. COOPER (defense co-counsel): May we have a minute, your Honor?

"THE COURT: If you're smart you won't cross-examine.

"MR. DENEFE: We have no cross-examination, your Honor."

Canon 2, subd. A, Iowa Code of Judicial Conduct requires a judge to " * * * conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Court rule 119.

The first requirement for the administration of justice is a court which acts with what Edmund Burke called the "cold neutrality of an impartial judge." In his classic definition of the qualities of a judge Socrates said: "Four things belong to a judge: to hear courteously; to answer wisely; to consider soberly; and to decide impartially." Our views of the stern requirements of judicial calling have been centuries in their development. In his essay "Of Judicature" Sir Francis Bacon said:

" * * * Patience and gravity of bearing is an essential part of justice; and an over-speaking judge is no well-tuned cymbal. It is no grace to a judge first to find that which he might have heard in due time from the bar; or to show quickness of conceit in cutting off evidence or counsel too short, or to prevent information by questions, though pertinent. * * *."

██ It is urged in respondent's defense he was prompted to his helpfulness of defense counsel by their status as student lawyers. Under our court rule 120 law students, under the supervision of licensed counsel, may participate in prosecutions of the type originally involved here. It is argued the two student attorneys were facing an experienced prosecutor and the interests of justice demanded participation by the trial court to equalize the opposing forces in the search for truth. The argument is a misinterpretation of rule 120 and the proper nature of a trial.

It was not our intention in adopting rule 120 to transfer all or any part of the responsibility of representing litigants to the judge. We think it idle to compare lack of trial experience of the student counsel with the number of years of trial experience of this young prosecutor. In adopting rule 120 we assumed the competence of student attorneys to discharge the responsibilities thereby entrusted to them.

In any event it is ordinarily a dangerous practice for a presiding judge to contribute his efforts in an attempt to equalize what he perceives to be disparity in the trial ability of opposing counsel. Such practice is apt to proceed from disparity in the rightness of one side or the other, rather than the preparation or ability of counsel. It is often difficult for the presiding judge

to distinguish exactly where the one disparity begins and the other ends.

This is not to discourage nor inhibit a salutary tradition as old as the legal profession. Experienced members of the profession, judges and lawyers alike, commonly counsel the newer and less experienced among us. But the heady satisfaction enjoyed from making such a contribution, by the very nature of the trial process, must be denied a judge presiding at trial.

Recent changes in our understanding of the rights of accused both before and during trial have brought increased pressures upon prosecutors. The interests of justice do not demand, nor will they permit, the addition of such a burden as was placed on the prosecution in this case.

Justice, to be sure, is due the accused. " * * * But justice, though due to the accused is due to the accuser also. The concept of fairness must not be strained till it is narrowed to a filament. We are to keep the balance true." Snyder v. Massachusetts, 291 U.S. 97, 122, 54 S.Ct. 330, 338, 78 L.Ed. 674.

We are to keep it true, not by trial participation as an advocate, but by the impartiality that is the noblest tradition of the judicial calling.

Writ sustained but not remanded.