**STATE of Iowa, Appellee,**

v.

**John Joseph DROSTE, Appellant.**

**No. 57381.**

Supreme Court of Iowa.

Aug. 29, 1975.

Simon W. Rasche, Jr., Camanche, for appellant.

Richard C. Turner, Atty. Gen., Thomas D. McGrane, Asst. Atty. Gen., G. Wylie Pillers, III, County Atty., for appellee.

Submitted to MOORE, C. J., and MASON, RAWLINGS, LeGRAND, and McCORMICK, JJ.

MASON, Justice.

Defendant, John Joseph Droste, was charged with operating a motor vehicle while under the influence of an alcoholic beverage contrary to section 321.281, The Code. Trial to a jury resulted in his conviction of the crime charged. He appeals from judgment and sentence imposed upon that conviction.

The factual background leading to this prosecution occurred March 19, 1974. At approximately 8 p. m. on this date defendant was driving in a northerly direction on Third Street in Clinton when at about the 3700 block he swerved over the center line and collided with a semitrailer truck which was driving south.

Roger Wilkie, who had followed the truck several miles, witnessed the accident. Wilkie testified as the car swerved to the west of the center line, the truck began to pull off onto the west shoulder. Unfortunately, this maneuver failed to avoid the ensuing collision of the car with the truck's rear dual wheels. There was evidence the accident occurred on the western one-half of the dry, concrete street.

The Clinton police arrived on the scene approximately five minutes after the collision. Patrolman David Speakman testified the semi was about one-half off the street. He requested the drivers of the involved vehicles identify themselves. As Mr. Droste stepped forward, he stumbled or fell into the officer. At that, Speakman placed defendant under arrest for operating a motor vehicle while under the influence of an alcoholic beverage. Defendant was put into the squad car and taken to the Law Enforcement Center. Speakman stated 20 to 30 minutes elapsed from the time of his arrival at the scene of the mishap until his and defendant's return to the police station.

Defendant was interviewed in the conference room at the Law Enforcement Center. The odor of alcohol, slurred speech, bloodshot eyes and staggering evidenced defendant's intoxication. Defendant furthermore admitted he had been drinking. However, the testimony is uncontradicted defendant easily negotiated three physical tests—the eye-to-nose test, picking up coins, and walking a straight line. These tests were recorded on video tape; in this regard, the officers testified the video tape machine was not operating correctly. Patrolman Speakman and another officer stated there was a marked improvement during and deterioration after these recorded tests of defendant's performance.

Because one Dr. Meyer was not available to administer a blood test, defendant did not consent to one. He did, however, sign the consent form for a breath test which was administered. Chemist John J. Wilson testified the amount of alcohol in defendant's breath was the equivalent of a .321 of one percent blood alcohol level. Wilson also stated while people do react differently to certain amounts of alcohol, a person with the aforementioned level would, in any event, be under the influence.

At the close of the State's evidence, defendant interposed a motion for mistrial which dealt with trial court's allowing Wilson's testimony concerning the breath test to go to the jury. The following bases for the motion were argued: (1) no evidence established where the breath specimen came from or (2) whose specimen it actually was; (3) "that there is nothing to establish that what Officer Speakman sent to John Wilson was, if anything—since neither Officer Speakman nor Mr. Wilson testified to an identifiable exhibit"; (4) there was no evidence Dr. Meyer was not available to administer the blood test; (5) no evidence established the breath bag was ever "crimped"; (6) no evidence was introduced the breath test machine was warmed up for the 15 minute period (and therefore operational) before the test was administered; (7) "there is no evidence that any type of control was used to determine whether the specimen, as taken, and that that machine was operational at the time the specimen was taken"; and (8) nothing indicated the container for the breath specimen was in "an original, factory wrapped carton" or that such container had not been broken by anyone. The motion was overruled.

Defendant's motion for a dismissal then followed. The above reasons were set forth, plus the fact of a "fatal variance" in the State's evidence of defendant's intoxication; i. e., the officers' testimony of defendant's intoxicated characteristics in opposition to his performance on the dexterity tests. This motion too was overruled.

Both were renewed and overruled at the close of all evidence.

Finally, both defendant's and the State's closing arguments are reported. One of the errors presented on appeal arose as follows during defendant's argument:

" * * * Henry J. Fries testified under oath that is man's hand was shaking to badly he could not do what—

"MR. WOODIN: I object to that. The argument is going—

"THE COURT: Your argument is a misstatement of the record. He did not state his hand was shaking.

"MR. RASCHE: (Continuing) His arm was moving or he was—

"THE COURT: The record is that he testified his balance, concerning his balance, Mr. Rasche.

"MR. RASCHE: (Continuing) And the testimony further developed then that he wasn't able to put his fingers on the little card. You mean to tell me, ladies and gentlemen of the Jury—

"MR. WOODIN: Objection. That was not the testimony. Not that he could not put his fingers; that he was moving his fingers.

"THE COURT: The testimony that he was, because of his balance, that his fingers were not steady, that they had to be extremely steady. Go ahead."

Defendant assigns the following errors as a basis for reversal: (1) the trial court erred by asking Patrolman Speakman whether the breath test was administered within two hours of defendant's arrest; (2) the trial court became an advocate for the State and thereby committed prejudicial error when it advised the prosecutor in chambers how to establish foundation and chain of possession incident to the admission of chemist Wilson's testimony on the breath test; (3) in regard to the second error presented, the trial court abused its discretion by allowing the State to recall Patrolman Speakman to establish proper foundation; (4) the trial court's refusal to allow

the defense to cross-examine Wilkie concerning his whereabouts before witnessing the accident and whether he had been drinking constituted an abuse of discretion and a denial of the right to effective cross-examination; (5) the State failed to establish the police officer employed devices or methods approved by the Commissioner of Public Safety in administering the breath test; (6) prejudicial error was effected by the trial court's allowing the prosecutor to read aloud the statute dealing with the presumption of intoxication; and (7) the trial court erred by restricting defendant's closing argument dealing with the statements of Officer Fries.

These contentions will be considered other than in the order argued.

I. During the direct examination of the chemist, Wilson, defendant objected to questions propounded to this witness by the State in regard to analysis of the breath sample. We set out the objection as then urged:

"Objection on the grounds it calls for a conclusion and opinion for this witness, for which there has been no proper foundation laid. Secondly, it is objected to on the ground that there is no chain of possession. Thirdly, there is nothing to establish in this record or identify any specific man whatsoever."

The eight grounds urged by defendant for a mistrial by reason of the trial court's allowance of Wilson's testimony concerning the breath test have been set out earlier.

In written brief and argument defendant now insists in his fifth assignment that the State failed to establish that Speakman was using devices or methods approved by the Commissioner of Public Safety in administering the breath test.

■ When the admission or exclusion of evidence is challenged in the trial court our adversary system imposes the burden upon counsel to make a proper record to preserve error. It is elementary that unless reasons for the objection are obvious an objection to offered evidence must be sufficiently specific to advise the trial court why it is inadmissible and enable opposing counsel to take proper corrective measures to remedy the defect if possible. The court to which the evidence is offered is entitled to know on what grounds it is challenged and should not be left to speculate as to whether the evidence is in fact subject to some infirmity which the objection does not point out. A specific objection, if overruled, cannot avail the objector except as to the ground specified since the court is not bound to look beyond the ground of the objection thus stated. Every ground of exception which is not particularly specified is to be considered as abandoned. *State v. Bruno,* 204 N.W.2d 879, 886 (Iowa 1973); *State v. Williams,* 207 N.W.2d 98, 109–110 (Iowa 1973); *Porter v. Iowa Power and Light Company,* 217 N.W.2d 221, 231 (Iowa 1974); *Vine Street Corporation v. City of Council Bluffs,* 220 N.W.2d 860, 862 (Iowa 1974).

Where objector relies on immateriality or irrelevancy, see *State v. Clay,* 213 N.W.2d 473, 476–477 (Iowa 1973).

Defendant's contention urged in his fifth assignment in this court is based on the foundation requirements for the admission of breath test results referred to in *State v. Hansen,* 203 N.W.2d 216, 223 (Iowa 1972) and *State v. Berch,* 222 N.W.2d 741, 744 (Iowa 1974), where this court said the results of the breathalyzer test should be admitted only on a showing (1) of the devices and methods approved by the Commissioner of Public Safety for the taking of such tests as provided in section 321B.4 and (2) proof that the test was given by use of the approved devices and methods. See also *State v. Jensen,* 216 N.W.2d 369, 372 (Iowa 1974) where the procedural and substantive law of implied consent is summarized.

■ The objections urged by defendant at trial do not serve to preserve for review in this court the issue presented by this assignment. This is true even though in his motion for new trial defendant for the first

time urged there was nothing in the record to establish the device used to determine the alcoholic content of defendant's blood was approved by the Commissioner of Public Safety or that the methods employed in the use of the device were approved by the Commissioner as required by section 321B.4. The grounds of a motion for new trial must stand or fall on exceptions taken at trial and a party cannot in a post verdict motion amplify or add new grounds as a basis for relief. *Dutcher v. Lewis,* 221 N.W.2d 755, 758 (Iowa 1974).

None of the objections urged by defendant in connection with the testimony of Speakman aid defendant's present contention.

The assignment presents nothing for review in this court.

II. In his third assignment defendant maintains the trial court abused its discretion by allowing the State to recall Patrolman Speakman to establish a proper foundation for testimony relating to the breath test analysis.

Speakman had testified and had been excused after defendant's cross-examination. When it developed in connection with the direct examination of Wilson that the State had failed to establish compliance with the procedural steps required by section 321B.4, The Code, the trial court called counsel into chambers for the purpose of conducting an educational program in criminal procedure. The State was permitted over defendant's objection to recall Speakman for the purpose of further questioning along this line.

■ The matter of recalling a witness after he had testified rests within the sound judicial discretion of the trial court and the exercise of such discretion will not be interfered with unless there is a clear showing of abuse. This appears to be the universal rule. *Sweet v. Wright & Spencer,* 57 Iowa 510, 512, 10 N.W. 870, 871 and *Miller v. Hartford Fire Ins. Co.,* 70 Iowa 704, 707, 29 N.W. 411, 413. See also *State v. Mason,* 203 N.W.2d 292, 295–296 (Iowa 1972).

There is no showing of abuse under this record.

Defendant's contention in this respect is without merit.

III. Defendant's sixth assignment challenges the trial court's ruling permitting the county attorney as a part of the interrogation of Wilson to read aloud a portion of Code section 321.281 over defendant's objection. The witness was then asked how the results of his analysis of defendant's breath test compared to the standards set forth in the statute. The witness answered, "It's more than three times the limit, more than three times ten."

We set out the portion of the statute involved:

"For the purposes of this section, evidence that there was, at the time, more than ten hundredths of one per centum by weight of alcohol in his blood shall be admitted as presumptive evidence that the defendant was under the influence of an alcoholic beverage."

The quoted portion of the foregoing statute fixes the standard for admissibility of evidence of alcoholic content in a person's blood as presumptive evidence that person was under the influence of an alcoholic beverage.

■ When a standard, or a measure, or a capacity has been fixed by law, no witness, whether expert or non-expert, nor however qualified, is permitted to express an opinion as to whether or not the person or the conduct, in question, measures up to that standard. On that question the court must instruct the jury as to the law, and the jury must draw its own conclusion from the evidence. *Hegtvedt v. Prybil,* 223 N.W.2d 186, 190 (Iowa 1974).

Adherence to the foregoing principle serves to establish a standard of propriety separating the impartial role of the judge from the adversary roles of counsel. It insures that the role of the judge in instructing on the law is not usurped by counsel, thereby destroying impartiality of the

forum. See *People v. June,* 34 Mich.App. 313, 191 N.W.2d 52, 54.

We perceive no rational theory under which the State might contend the question put to Wilson would elicit evidence that was either relevant or material to a matter in dispute in the present lawsuit.

 Wilson had testified as to the results of his analysis of defendant's breath specimen and had explained its significance as to the alcohol in defendant's blood. The question calling for the witness' comparison of his analysis of defendant's breath to the standards set forth in the statute referred to in the State's question was not a proper subject for expert testimony.

The trial court erred in permitting the question over defendant's objection.

IV. Defendant's fourth assignment concerns the trial court's refusal to permit defense counsel to cross-examine Wilkie regarding his whereabouts before witnessing the accident and whether he had been drinking.

 In *State v. Menke,* 227 N.W.2d 184, 191 (Iowa 1975), this court pointed out that reasonable latitude must be accorded a cross examiner but the scope thereof as to any proper subject of inquiry rests generally in the trial court's sound discretion.

In *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353, the Court stated:

"The Sixth Amendment to the Constitution guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' This right is secured for defendants in state as well as federal criminal proceedings under *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Confrontation means more than being allowed to confront the witness physically. 'Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination.' *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965). Professor Wigmore stated:

" 'The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers.' (Emphasis in original. 5 Wigmore, Evidence § 1395, at 123 (3d ed. 1940).)

"Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted *to delve into the witness' story to test the witness' perceptions and memory,* but the cross-examiner has traditionally been allowed to impeach, i. e., discrediting, the witness." (Emphasis supplied).

The State argues defendant should have made an offer of proof to show what bearing the sobriety or intoxication of the eye witness had on the present case. This statement quoted in *Smith v. State of Illinois,* 390 U.S. 129, 132–133, 88 S.Ct. 748, 750, 19 L.Ed.2d 956, from *Alford v. United States,* 282 U.S. 687, 692–694, 51 S.Ct. 218, 219–220, 75 L.Ed. 624, 628, is relevant to the State's contention:

"It is the essence of a fair trial that reasonable latitude be given the cross-examiner, even though he is unable to state to the court what facts a reasonable cross-examination might develop. Prejudice ensues from a denial of the opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test, without which the jury cannot fairly appraise them. * * * To say that prejudice can be established only by showing that the cross-examination, if pursued, would necessarily have brought out facts

tending to discredit the testimony in chief, is to deny a substantial right and withdraw one of the safeguards essential to a fair trial.

" * * *

"The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. * * * But no obligation is imposed on the court, such as that suggested below, to protect a witness from being discredited on cross-examination, short of an attempted invasion of his constitutional protection from self incrimination, properly invoked. There is a duty to protect him from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him. * * * But no such case is presented here. * * *."

In the light of the foregoing statement of principle the State's contention is found to be without merit.

■ We find the trial court abused its sound discretion in thus limiting defense counsel's cross-examination of Wilkie.

V. In another assignment defendant attacks the trial court's restriction of his closing argument and challenges the propriety of the trial court's comments in the presence of the jury during defendant's closing argument.

During defense counsel's closing argument the county attorney interrupted 11 times with objections, five were overruled.

Defendant maintains the trial court commented to the extent it unduly emphasized the witness' testimony by telling the jury what the particular witness had testified to. Earlier in this opinion we have set out the portion of the record on which defendant's alleged error is based.

*State v. Phillips,* 226 N.W.2d 16, 19 (Iowa 1975), has this statement:

"Counsel is entitled to some latitude during closing argument in analyzing the evi-

dence admitted in the trial. He may draw conclusions and argue all permissible inferences which may reasonably flow from the record which do not misstate the facts. * * * [citing authorities].

"Of course, counsel has no right to create evidence by his argument nor interject his personal beliefs. It is for the jury to determine the logic and weight of the conclusions drawn."

Defendant insists the cumulative effect of the court's statements and rulings was to deny him a fair trial.

The issue is whether defense counsel's remarks were logical inferences deducted from the evidence.

■ The defense was attempting to create a reasonable doubt in the minds of the jury based upon the inconsistencies in the evidence bearing on defendant's intoxication as shown by his ability to perform physical balancing tests and his appearance on the video tape as against the chemical test results.

It is our view the comments of the court and the restrictions imposed were erroneous.

VI. Defendant's remaining assignments of error deal with his complaint as to the trial court's participation in the proceedings.

One incident complained of was the in chambers discussion of foundation requirements previously referred to. This could be accounted for on the basis of the prosecutor's inexperience. In any event, since the suggestions made by the court to the county attorney as to how to proceed took place in chambers rather than in the presence of the jury it is doubtful whether the court's conduct in this instance was prejudicial. Nevertheless, " * * * it is ordinarily a dangerous practice for a presiding judge to contribute his efforts in an attempt to equalize what he perceives to be disparity in the trial ability of opposing counsel. Such practice is apt to proceed from dispari-

ty in the rightness of one side or the other, rather than the preparation or ability of counsel. It is often difficult for the presiding judge to distinguish exactly where the one disparity begins and the other ends." *State v. Glanton,* 231 N.W.2d 31, 35–36 (Iowa 1975).

The record discloses many other instances where the judge interjected himself into the trial which support defendant's claim the trial judge assumed the partisan role of advocate for the prosecution.

This statement which is relevant to the problem appears in *State v. Thornburgh,* 220 N.W.2d 579, 585 (Iowa 1974):

"The trial court should act impartially and avoid conduct by which the jury could infer bias against either party. * * * [citing authority]. In general, the court should also avoid extreme use of its power to question witnesses in order not to assume the role of an advocate. * * * [citing authorities]."

The matters complained of in these assignments are not likely to recur in a new trial.

■ In the court's opinion the cumulative effect of the trial court's errors as discussed in divisions III, IV and V of this opinion was a denial of defendant's right to a fair trial.

The case is therefore

Reversed and remanded.