# IN THE COURT OF APPEALS OF IOWA

No. 24-0651
Filed June 18, 2025

**JASON MCKENNEY,**
        Plaintiff-Appellant,

**vs.**

**IOWA PHYSICIANS CLINIC MEDICAL FOUNDATION, d/b/a UNITY POINT CLINIC and UNITY POINT CLINIC FAMILY MEDICINE URBANDALE and EDMUND J. PIASECKI, A.R.N.P.,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Polk County, Coleman McAllister,

Judge.


        A plaintiff appeals the denial of his motion for new trial.  **AFFIRMED**.


        J. Russell Hixson (argued) of Hixson & Brown, P.C., West Des Moines, and

Nicholas Rowley and Chayce Glienke of Trial Lawyers for Justice, P.C., Decorah,

for appellant.

        Jeffrey R. Kappelman (argued), Jack D. Hilmes, Erik P. Bergeland, and

Jacob T. Wassenaar of Finley Law Firm, P.C., Des Moines, for appellees.


        Heard at oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**GREER, Presiding Judge.**

On November 11, 2019, Jason McKenney presented himself to Iowa Physicians Clinic Medical Foundation (Unity Point) complaining of stomach pain; he also mentioned a cut on his left foot. Several days later, the bacteria in the cut entered the layer of tissue surrounding the muscle and spread up McKenney's leg. Ultimately, McKenney underwent a below-the-knee amputation of his left leg. McKenney brought this action in response, alleging negligent care on the part of Unity Point's treating nurse practitioner, Edmund Piasecki,[1] by failing to (1) send McKenney to the emergency room the day he was first seen, (2) inform him of the scheduled wound care appointment on the next day, or (3) document the urgency of the referral order to the wound center. After a trial, the jury returned a verdict finding no negligence.

McKenney appeals, arguing the district court erred in admitting exhibit B— a copy of the referral to the wound clinic—both because it was hearsay and because it was "altered" by someone at Unity Point and, thus, constituted fraud on the court. Along with that assertion, McKenney raises a claim of misconduct and misrepresentations made by counsel for the Medical Providers during the course trial, which he asserts necessitates a new trial. After review, we reject McKenney's evidentiary challenges and affirm the denial of the motion for new trial.

---

[1] McKenney asserted that Piasecki was acting in the scope of his employment as an employee of Unity Point, so the clinic would be liable for Piasecki's conduct under the doctrine of respondeat superior. We refer to the defendants as the "Medical Providers" unless we are discussing the actions of Piasecki specifically.

## I. Background Facts and Proceedings.

As reported in the November 11 clinic notes Piasecki authored, McKenney was

> a pleasant 43-year-old male with history of type 2 diabetes. [McKenney] report[ed] last few days of vomiting, diarrhea, fever, chills and believes [he] may be had a stomach virus.
>     Interestingly, [McKenney] shows provider a 1 cm jagged wound to bottom of right foot between the webs of the fourth and fifth digit right foot plantar surface.

Piasecki examined the wound, tested its depth with a cotton swab, and concluded McKenney had a small diabetic foot ulcer that was infected. He prescribed oral antibiotics. Then, Piasecki referred McKenney to the wound healing center for further care and called the clinic to set up an appointment for McKenney the next morning—November 12 at 10:00 a.m. Arein Mutchler, a patient access associate at the wound healing center, testified that she remembered Piasecki calling and understanding the "patient needed to be seen right away." With the next-day appointment scheduled, Piasecki noted an "expedited referral" to the wound care center in the formal entry of the electronic order, which would also have been available to the wound care center at some point after the initial visit.

As discussed during the trial, Unity Point contracts with Epic Systems Corp. (Epic), a third-party vendor with software that saves and maintains electronic medical records. These records are shared between clinics, hospitals, and other medical offices, and Piasecki's referral was shared with the wound care clinic through that system as an "internal" referral. McKenney did not show for the morning appointment, and Mutchler called him later that morning, leaving a voice message for him to call the center to reschedule. McKenney testified he was

4

unaware of the appointment with the wound care center on November 12. He stated he called the wound care center as soon as the message "popped up" on his cell phone. In any event, McKenney returned the call on November 14, and his appointment was rescheduled to November 26. But on November 15, McKenney returned to the Unity Point clinic to see Piasecki, complaining that he continued to have a low-grade fever and his wound had not improved. He told Piasecki that he had not sought treatment at the wound care center. After a follow-up examination, Piasecki instructed McKenney to go to the emergency department. McKenney did so and was admitted to the hospital as a patient. After other attempts to remove infected portions of his foot and leg, McKenney received a below-the-knee amputation on November 22.

McKenney brought a lawsuit against the Medical Providers for medical negligence, claiming Piasecki did not meet the standard of care when he treated McKenney's wound on November 11. Before trial, McKenney obtained two versions of the November 11 wound care center referral; the two versions were marked exhibit B and exhibit 16 at trial. Exhibit B shows Piasecki entered on the electronic referral form that the urgency status of McKenney's complaint was "1-3 Days," meaning the appointment needed to be scheduled within that time frame. Exhibit 16 showed the urgency status was entered as "routine," which meant the patient could be scheduled out five or more days from the date of the referral.

The matter proceeded to a seven-day jury trial in October 2023. After the closing arguments, McKenney moved for mistrial, arguing that during closing the Medical Providers' counsel made improper arguments that included unproven personal thoughts, vouching, and essentially calling opposing counsel a "liar." The

district court denied McKenney's motion for mistrial. The case was submitted to the jury, which found that Piasecki was not negligent.

After trial, McKenney filed a motion for a new trial, claiming:

[T]he court erred in: (1) Not excluding defense witness Arein Mutchler; (2) Admitting Exhibit B; (3) Excluding Daniel Mowry as a rebuttal witness; and [(4)] In instructing the jury.
. . . Plaintiff contends that defense counsel: (1) Committed misconduct and/or fraud in its representations to the Court about Exhibit B; and (2) Defense counsel . . . committed misconduct by misrepresenting the evidence during his closing arguments to the jury.

The district court rejected each of McKenney's claims and denied his motion for a new trial.

McKenney appeals from the denial of his motion for new trial.

## II. Discussion.

Iowa Rule of Civil Procedure 1.1004 governs motions for new trial. That rule sets out nine possible grounds an aggrieved party may rely on when asserting an issue "materially affected movant's substantial rights." Iowa R. Civ. P. 1.1004. Our standard of review for a new-trial ruling depends on the grounds raised in that motion. *Olson v. Sumpter*, 728 N.W.2d 844, 848 (Iowa 2007). If the motion addresses a discretionary ground, we review for an abuse of discretion. *Id.* This would involve claims of misconduct, accident, and surprise. *Fry v. Bauvelt*, 818 N.W.2d 123, 128 (Iowa 2012). If the motion depends on a legal question, we review for errors at law. *Olson*, 728 N.W.2d at 848. For example, denial of a motion related to sufficiency of the evidence, legal error, or a directed verdict are reviewed for correction of errors at law. *Fry*, 818 N.W.2d at 128. In his motion for new trial, McKenney asserted that the verdict did not "effectuate substantial justice"

and that there was "reversable error" involving several issues primarily involving the admission of exhibit B.

In the new trial motion and now on appeal, McKenney argues: (1) the district court should not have admitted exhibit B because there was no foundation to support its admission, thus McKenney was prejudiced; (2) the improper admission of exhibit B constituted fraud on the court, which included "continual misrepresentations" related to the exhibit; and (3) the misconduct and misrepresentations by the Medical Providers' counsel during the closing argument were so pervasive it prejudiced McKenney, requiring a new trial. So, we address each of these claims, noting that some of our findings are interrelated within the issues presented.

## A. Exhibit B.

*Evidentiary Challenge.*

We start with the evidentiary challenge to exhibit B. McKenney's argument centers on his foundation and hearsay objection to the admission of exhibit B—the medical referral note to the wound care center. At trial, McKenney stated: "We would object based on foundation not only on the document itself but there's multiple layers of hearsay, and foundation hasn't been laid for those multiple layers." The district court overruled the objection and admitted the document. As both parties assert, the standard of review relating to a ruling on hearsay is for errors at law. *State v. Skahill*, 966 N.W.2d 1, 8 (Iowa 2021). When the admission of exhibit B was addressed in McKenney's motion for new trial, the district court determined:

At the time of trial, the Court agreed with [the Medical Providers] that they had laid adequate foundation for admission of Exhibit B under the business record exception through the testimony of Arein Mutchler. Consequently, the Court admitted Exhibit B as a business record over [McKenney's] objection. After reviewing the transcript of the trial testimony of Ms. Mutchler, the Court once again concludes that [the Medical Providers] met their burden of proving that Exhibit B was a business record.

During her testimony, Ms. Mutchler explained that on November 11 and 12, 2019, she was employed by the [wound care center] as a Patient Access Associate, which is, in essence, a medical secretary position. As part of her job duties, Ms. Mutchler was responsible for answering phone calls, and for assisting patients in making appointments. On November 11, 2019, Ms. Mutchler received a phone call from . . . Piasecki during which Ms. Mutchler assisted . . . Piasecki in making an appointment for [McKenney] at the Wound Center for 10:00 a.m. on November 12, 2019.

Ms. Mutchler further testified that she manually entered the appointment in the Wound Center's Epic computer system following the call from. . . Piasecki. Ms. Mutchler also testified that when [McKenney] failed to appear at his November 12, 2019, appointment at the Wound Center, she called and left a message on [McKenney's] phone (Exhibit EE).

Regarding Exhibit B, Ms. Mutchler testified that she recognized Exhibit B as a printout of the Epic computer system because she had gathered it as part of her job duties in response to a subpoena issued by [the Medical Providers] for [McKenney's] medical records at the Wound Center. Ms. Mutchler also testified that the records regarding the referrals that were contained on pages 2 through 4 of Exhibit B were received and made in real time at the time of the referral. Ms. Mutchler also testified that the records contained in Exhibit B was kept in the ordinary course of business of the Wound Healing Center. Prior to the offer of Exhibit B, the Court had already heard from . . . Piasecki about his role in making the referral to the Wound Center and the Court had already heard evidence about the Epic computer system.

Based on the other evidence then in the record and Ms. Mutchler's testimony, the Court concludes that it did not err in the admission of Exhibit B as [the Medical Providers] had laid an adequate foundation to establish Exhibit B was admissible as a business record. While Ms. Mutchler was not the record's custodian at the Wound Center, she was clearly "another qualified witness" within the meaning of [Iowa Rule of Evidence] 5.803(6)(D) in that she has assisted the record's custodian in gathering records, including Exhibit B, in response to the [Medical Providers'] subpoena.

In fact, Ms. Mutchler specifically testified that she recognized Exhibit B as one of the records she assisted in gathering from the

> Wound Center's records. The fact that the records were gathered in response to a subpoena to the Wound Center's records custodian also supports a finding that such records were properly business records.
>
> It is also clear from Ms. Mutchler's testimony that Exhibit B was made contemporaneously with the Wound Center appointment that Ms. Mutchler assisted . . . Piasecki in making for November 11, 2019. [The Medical Providers] also presented sufficient evidence from which the Court could conclude that the Wound Center's Epic computer records generally, and Exhibit B specifically, were records that were kept in the ordinary course of business of the Wound Center. [The Medical Providers] further established that making entries into patient's Epic computer records was a regular practice of the Wound Center.

Without yet discussing assertions that exhibit B was a product of fraud, we first ask if the district court was correct in admitting the exhibit into evidence.

First, McKenney argues exhibit B was not a record created by the wound care center and instead was a medical record from Unity Point clinic, so it was not a record created in the regular course of the *wound care center's* business. Based on this distinction, he asserts that the medical records from Unity Point are hearsay within hearsay—Unity Point's clinical records were one level of hearsay nested in the wound care center's records, a second level of hearsay. We agree the medical record constitutes hearsay but disagree that it is hearsay upon hearsay. "'Hearsay' means a statement that . . . [t]he declarant does not make while testifying at the current trial or hearing; and . . . [a] party offers into evidence to prove the truth of the matter asserted in the statement." Iowa R. Evid. 5.801(c). "Hearsay is not admissible at trial subject to certain exceptions and exclusions." *See State v. Smith*, 876 N.W.2d 180, 185 (Iowa 2016); *see also* Iowa Rs. Evid. 5.802, 5.803. McKenney's medical record, in whole, is one level of hearsay. Because the medical record is one level of hearsay, the business record exception to the

hearsay rule, as applied by the district court, could be the vehicle to allow his medical record into evidence. *See State v. Buelow*, 951 N.W.2d 879, 884 (Iowa 2020) ("[M]edical records are admissible hearsay under the exception for records of a regularly conducted activity.").

Next, McKenney cites *Madison v. Colby* to support his contention that one doctor's record is not admissible when it is referenced by another doctor in a separate practice for the purpose of treatment. 348 N.W.2d 202, 203–204 (Iowa 1984). But in *Madison*, the foundational requirements were not met when the party submitting the exhibit "failed to show that [the doctor's] record was made in the regular course of business at or about the time of the events recorded or that the sources of information and method of preparation were such as to indicate its trustworthiness." *Id.* at 204; *see also State v. Jackson*, 4 N.W.3d 298, 319–20 (Iowa 2024) (Mansfield, J., concurring in part and dissenting in part) (distinguishing *Madison*'s treatment of medical records evidence with how foundation was approached in *Jackson*). The requirements under the business record rule, Iowa Rule of Evidence 5.803(6), provide that a record of an act, event, condition, opinion, or diagnosis may be entered into evidence, even if the document is otherwise hearsay, if:

> (A) The record was made at or near the time by—or from information transmitted by—someone with knowledge;
> (B) The record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
> (C) Making the record was a regular practice of that activity;
> (D) All these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with rule 5.902(11) or rule 5.902(12) or with a statute permitting certification; and

(E) The opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

This rule "provides for the admission only of '[*a*] *record* of an act, event, condition, opinion, or diagnosis' that would otherwise be disallowed by the rule against hearsay." *Jackson*, 4 N.W.3d at 307 (quoting Iowa R. Evid. 5.803(6)) (finding that the business record exception relates to the record itself, not testimony about the record without admitting the record).

Regarding these business record admissibility requirements, McKenney makes several points. He insists that only a record's custodian could testify about the referral note and "[Mutchler's] total lack of information about both the preparation and safekeeping of [exhibit B] made [her] assurances of its integrity worthless." *State v. Fisher*, 178 N.W.2d 380, 384 (Iowa 1970). True, rule 5.803(6)(D) requires that the custodian of records or "another qualified witness" lay proper foundation for the business record. *See State v. Fiems*, No. 18-2241, 2020 WL 1879700, at *4 (Iowa Ct. App. Apr. 15, 2020) ("The conditions [of rule 5.803(6)(A)–(C)] must be 'shown by the testimony of the custodian or another qualified witness' or be certified by the custodian." (quoting Iowa R. Evid. 5.803(6)(D)).

To that end, Mutchler need not have personal knowledge as to the contents of the document. *See State v. Propps*, 376 N.W.2d 619, 621 (Iowa 1985) ("[Now-rule 5.803(6)] does not require the custodian of a record to have personal knowledge of each document. It is the impossibility of such recall that demonstrates the need for the exception."); *State v. Reynolds*, 746 N.W.2d 837, 843 (Iowa 2008) ("[T]he specific person who created the record in the course of

business need not testify to lay the foundation for the business records exception . . . ."). Rather, Mutchler needed knowledge of the circumstances in which the documents are kept. *See Reynolds*, 746 N.W.2d at 843 ("[T]he party offering the evidence must demonstrate the evidence was made in the course of . . . business, at or reasonably near the time, using standard procedures that reasonably indicate the trustworthiness of the information."). Her testimony met that hurdle. While Mutchler is not the author of the referral notice, she was informed on how the medical records were stored and used in the wound care center, how an individual could access the document, and how documents present when stored on the Epic system. She also assisted the record's custodian in gathering documents in response to the requests for information. Her on-the-job duties qualify her as "another qualified witness."

Here, we agree with the district court that the requisite foundation was laid at the time the offer was made. Mutchler testified she was familiar with the record-keeping system; had spoken with Piasecki when the referral was made; knew the referral record was kept in the ordinary course of business at the wound care center to manage its patient's treatment; and had confirmed the referral record in the system on that date, which would ensure its accuracy within the wound care center's records system.

While the cross-examination addressed differences between exhibit 16 and exhibit B, based upon Mutchler's testimony, the district court had the rule 5.803(6) assurances that were necessary for admission. The discrepancies went to timing concerns related to when notes were made on the referral form and who made them, but at the time the exhibit was offered at trial, there was no allegation of

fraud. Thus, we find the district court did not err in admitting exhibit B into evidence at trial. Accordingly, we need not address McKenney's prejudice argument.[2]

*Contentions regarding the Trustworthiness of Exhibit B Based on Fraud.*

It was not until McKenney filed his motion for new trial that he asserted fraud impacted the trustworthiness of exhibit B. The Medical Providers dispute error preservation on these issues. "[I]n applying our error-preservation rules, we must keep their underlying purpose in mind." *State v. Mann*, 602 N.W.2d 785, 791 (Iowa 1999). As our supreme court has explained:

> Error preservation is important for several reasons: (1) it affords the district court an opportunity to avoid or correct error that may affect the future course of the trial; (2) it provides the appellate court with an adequate record for review; and (3) it disallows sandbagging— that is, it does not "allow a party to choose to remain silent in the trial court in the face of error, tak[e] a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable."

*State v. Crawford*, 972 N.W.2d 189, 199 (Iowa 2022) (alteration in original) (quoting *State v. Ambrose*, 861 N.W.2d 550, 555 (Iowa 2015)). Confirmed as a "correct statement of law," *Crawford* repeated "that '[t]he grounds of a motion for new trial must stand or fall on exceptions taken at trial and a party cannot in a post verdict motion amplify or add new grounds as a basis for relief.'" 972 N.W.2d at 197 (alteration in original) (quoting *State v. Droste*, 232 N.W.2d 483, 488 (Iowa 1975)). "Because we are error-correction courts, we generally don't decide issues for the first time. Rather, we usually decide only those issues that were (1) properly raised

---

[2] However, we note the district court referenced what it heard in "real-time," pointing to the "thorough and pointed cross-examination of Mutchler" regarding exhibit B, which undercut McKenney's claim the admission of the evidence prejudiced him. And we agree with the district court's summary of the impact of the cross-examination.

in the district court and (2) ruled on by the district court." *State v. Chawech*, 15 N.W.3d 78, 83 (Iowa 2024). If parties do not present an issue "to the district court to rule on, and if the district court did not in fact rule on it, we lack any 'error' to correct." *Id.* (citation omitted).

Prior to the trial starting, McKenney had all the available information to contest the trustworthiness of exhibit B. He had been in possession of exhibit B since September 28, 2021. And, McKenney possessed at least part of the Epic systems audit log of medical records since receiving the response to a subpoena on November 17, 2021, well before the October 2023 trial.[3] McKenney was on notice of the discrepancy between exhibits B and 16 before trial. He questioned Mutchler about the discrepancy between exhibit B and exhibit 16, indicating he was aware the two documents differed in the "urgency" classification. When asked to explain the discrepancy, Mutchler testified, "So if Mr. Piasecki had put an order in and called us, it is possible in him trying to do something quickly before end of close that it did go in as routine." On top of that explanation, the jury learned that the first scheduled appointment was treated by both Piasecki and the wound clinic staff as urgent because the appointment was set immediately the next day. Ultimately, the complaint related to exhibit B was that it was different from exhibit 16.

True, McKenney argued in the motion in limine that exhibit B was unreliable and inconsistent with the other records. But those arguments addressed the prejudice of not being able to cross-examine the "declarant." There was no

---

[3] At trial, the parties entered into a stipulation that set out various dates and actions from the audit trail, all made part of the evidence at trial.

reference to any fraud in the making of the exhibit B before or at trial. The district court addressed the objection to exhibit B's reliability by allowing the information to be developed at trial, which it was. The record made on the objections to exhibit B raised the hearsay nature of the record and the lack of foundation to establish "where [exhibit B] comes from. That's my problem with [exhibit B]." McKenney had an opportunity to raise the issues of fraud and trustworthiness to the court—issues that may have warranted exclusion—but failed to do so until post-trial. As a result, McKenney failed to preserve error on this issue.

## B. Pervasive Misconduct and Misrepresentation.

Addressing alleged misconduct during the presentation of evidence and in the closing arguments, McKenney contends "[Medical Providers' counsel's] comments were so flagrantly improper and so evidentially prejudicial that this Court can consider the misconduct and order a new trial."

*During the Presentation of the Evidence.*

As an example, McKenney takes issue with opposing counsel's statements when questioning one of McKenney's expert witnesses during trial:

> I want you to assume that the jury heard from a witness named Arein Mutchler. And she came in and testified that because the appointment was linked right before they were closing the phones at 4 p.m. on Monday, the 11th, Epic defaulted it to routine, *and when she came in the next morning, she changed it—the urgency from routine to urgent.* Okay?

(Emphasis added.) And:

> Arein Mutchler received that appointment. It was scheduled at 4:02 p.m. *The next morning, when she reviewed the order, as she testified clearly and unequivocally, the order was changed—priority of the order was changed, as reflected in Exhibit B, to urgent, and that's how it remained throughout.*

(Emphasis added.) McKenney contends the proliferation of these misstatements over exhibit B continued throughout the trial and prejudiced the verdict.

In response, the Medical Providers assert that McKenney did not preserve error on this challenge. *See Chawech*, 15 N.W.3d at 83. They argued that each time the Medical Providers discussed the urgency status associated with exhibit B, McKenney had an obligation to object; he did not raise an objection related to any misrepresentation. And, McKenney did not address the cumulative misrepresentation claim he asserts on appeal when he moved for mistrial at the end of the case. *See State v. Johnson*, 272 N.W.2d 480, 483 (Iowa 1978) (noting that objections to improprieties in the testimony during the presentation of evidence not raised are waived). We agree. Because arguments over counsel's alleged misconduct and misrepresentations during the presentation of evidence were not raised during trial nor were they ruled upon by the district court, we find error was not preserved. Here the issue was not raised until a post-trial motion was filed, so the district court was unable to address McKenney's concerns during the trial.

*During the Closing Arguments.*

Raising the same error-preservation concern, the Medical Providers point to the record made involving the closing arguments. Contending their closing argument only addressed fair inferences from the evidence, the Medical Providers assert that even if error was preserved, there is no reason to grant a new trial. Attorneys are permitted some latitude in making their closing arguments. *State v. Carey*, 709 N.W.2d 547, 554 (Iowa 2006). Likewise, "[a] district court should grant a motion for a new trial only in exceptional circumstances," and we review the denial of such a motion for an abuse of discretion. *State v. Ary*, 877 N.W.2d 686,

705–06 (Iowa 2016). "[T]he district court [may] grant a new trial when there has been misconduct of the prevailing party that materially affected movant's substantial rights. Thus, while the trial court has broad discretion, there must have been misconduct, and it must have been prejudicial." *Loehr v. Mettille*, 806 N.W.2d 270, 279 (Iowa 2011) (cleaned up).

In general, if counsel commits misconduct, a contemporaneous objection is required to alert the court to the misconduct and cure the issue before an appeal becomes necessary. *Andrews v. Struble*, 178 N.W.2d 391, 401 (Iowa 1970) ("When an improper remark is made by counsel in the course of jury argument, it is the duty of the party aggrieved to timely voice objection."). Here, McKenney lodged objections following the closing arguments by way of a motion for mistrial. An objection is timely if lodged after closing arguments but before the matter is submitted to the jury. *Kinseth v. Weil-McLain*, 913 N.W.2d 55, 67–68 (Iowa 2018) ("Thus, our rule instructs that where the closing arguments are reported, a party's objection to the remarks of counsel during final jury argument urged at the close of the argument in motion for mistrial made before submission to the jury is timely." (cleaned up)).

Yet, McKenney's motion for mistrial did not concern misrepresentations related to exhibit B and Mutchler's testimony, although the district court addressed this contention in the ruling on the motion for new trial. Generally, new arguments may not be raised in post-trial motions. *See State v. Vonk*, No. 23-1443, 2024 WL 4370601, at *4 (Iowa Ct. App. Oct. 2, 2024) ("Raising an evidentiary objection via a motion for new trial is not sufficient to preserve error when proper objections were not made during trial."); *cf. 33 Carpenters Constr., Inc. v. State Farm Life &*

*Cas. Co.*, 939 N.W.2d 69, 76 (Iowa 2020) (concluding issue was preserved when district court implicitly rejected the argument with its ultimate ruling). And as for the other allegations raised in the mistrial motion, the district court did not address those arguments, making any reference to those arguments on appeal not preserved.

The closing-argument statements McKenney contests include the following: "And [Mutchler] changed it the very next day to urgent"; "And there it is: Urgency, one to three days. Exhibit B, in evidence, with a witness[, Mutchler,] who said, 'I took that call and I made that change on Tuesday morning'"; and "She changed it the next day. That's his favorite order. They're like, 'Ah-ha. We got [Medical Providers' counsel] to stipulate to the order, 548826806.' It's like, 'Oh, that's it.' She changed it to urgent the next day. It's Exhibit B." Again, no one objected to these arguments, and the jury was instructed during trial "that lawyers' comments and questions are not evidence." Before the closing statements, the court told the jury that "[t]he summations and arguments of counsel are not evidence nor should they be construed by you as evidence or instructions on the law." Finally, the jury was instructed:

> The following are not evidence:
> 1. Statements, arguments, questions, and comments by the lawyers. This specifically includes any statements made by the lawyers during opening and closing arguments.
> 2. Objections and rulings on objections.
> 3. Any testimony I told you to disregard.
> 4. Anything you saw or heard about this case outside the courtroom.

In light of successive admonitions, we cannot conclude the jury disregarded the court's guidance and, instead, took counsel's isolated statements during a lengthy

closing argument as fact. And, because no objection was lodged at the time of the closing arguments, the court could not expressly direct the jury to disregard, which is an appropriate method to address improper statements of counsel. *See State v. Brotherton*, 384 N.W.2d 375, 381 (Iowa 1986) ("Generally, an admonition to the jury to disregard inadmissible testimony is sufficient to cure any prejudice.").

Without addressing the preservation-of-error question, we agree with the district court's analysis on this issue as the district court is "in a better position to observe the matters complained of and to ascertain its effect, if any, on the jury." *Id.* The district court, in its ruling on post-trial motions, stated, "There is no reason to believe the jury did not follow the [c]ourt's repeated verbal and written instructions." We agree, and we affirm the denial of a new trial.

## C. Fraud on the Court.

As to this final challenge, the Medical Providers again assert that error was not preserved. Pointing to the record made during the hearing on the motion for new trial, McKenney argues that an analysis of the medical record audit confirms that exhibit B was created at some later time by someone at Unity Point and that the Medical Providers and counsel should have known they were presenting an invalid exhibit to the court and jury. But, McKenney's contention that the Medical Providers committed fraud on the court comes to us with the same procedural posture as his previous argument. McKenney did not raise the argument at trial, although he had the opportunity to do so. We review the trial court's ruling on motion for new trial under an abuse of discretion standard. *Riniker v. Wilson*, 623 N.W.2d 220, 230 (Iowa Ct. App. 2000).

As a refresher, McKenney had access to an audit log, exhibit B, and exhibit 16 well before the jury trial began. In failing to object at trial or move for mistrial related to this issue, under traditional norms of error preservation, his arguments should not have been preserved for post-trial motion. *See Olson v. BNSF Ry. Co.*, 999 N.W.2d 289, 295–96 (Iowa 2023). When the Medical Providers discussed exhibit B during trial with witnesses, there were no objections made to the references as to how exhibit B was prepared. Following closing arguments, where again these "misrepresentations" were claimed to have been made, there were no objections to the statements. And, in the motion for mistrial following the closing arguments, these allegations were not mentioned. It was only after the jury returned a verdict finding Piasecki was not negligent that McKenney raised these concerns in his motion for new trial, at which time the district court addressed the arguments.

But even if we were to address these late arguments, a finding of fraud on the court "would be justified only by the most egregious misconduct and would have to be supported by clear, unequivocal and convincing evidence. At the very least, it would require a showing of fault, willfulness, or bad faith . . . ." *Miller v. AMF Harley-Davidson Motor Co.*, 328 N.W.2d 348, 353 (Iowa Ct. App. 1982). "[A] court may modify or vacate a final judgment because of irregularity or fraud practiced upon the court." *Id.*; *see also* Iowa R. Civ. P. 1.1012(2). Here, McKenney asks that we grant a new trial because this is newly discovered evidence. *See* Iowa R. Civ. P. 1.1004(7). Rule 1.004(7) "allows a party to seek a new trial on the ground material evidence was discovered which could not with reasonable diligence have been discovered and produced at trial." *Benson v. Richardson*, 537

N.W.2d 748, 762 (Iowa 1995). To obtain a new trial, the moving party must demonstrate:

> (1) the evidence is newly discovered and could not, in the exercise of due diligence, have been discovered prior to the conclusion of the trial; (2) the evidence is material and not merely cumulative or impeaching; and (3) the evidence will probably change the result if a new trial is granted.

*Id.* Here, McKenney was aware of the Epic audit system but chose not to raise the concerns about the audit history until after the verdict was in, so we do not find the information is new evidence given that record.

McKenney roots his fraud claim in the "urgency" discrepancy between exhibit B and exhibit 16. We note that while this discrepancy was pointed out to the jury at trial, no party dug into the audit trail other than the stipulated portions that were provided to the jury. Yet, as a part of his motion for new trial, McKenney presented two sworn affidavits from Donald Hanson, a litigation consultant who reviewed an audit log and electronic medical records post-trial. Although McKenney's counsel walked the district court through the affidavit, Hanson did not attend the hearing or testify, nor did the Medical Providers have the opportunity to question Hanson. In response to Hanson's affidavit, the Medical Providers submitted two affidavits from Unity Point employees (Piasecki's medical assistant and the director of risk management) denying that they manipulated exhibit B, thus vouching for exhibit B's authenticity. At bottom, the district court was left with a classic battle of the evidence over credibility.

We do not find that the district court abused its discretion when it declined to rule on the credibility of Hanson because it lacked the opportunity to "observe and make credibility findings." Additionally, we cannot find the court abused its

discretion in determining McKenney did not meet his burden to prove exhibit B was manipulated and the verdict was based on fraud or misconduct. Even if McKenney preserved error on the issue, he did not meet the lofty burden of "egregious misconduct . . . supported by clear, unequivocal and convincing evidence." *See Miller*, 328 N.W.2d at 353. We conclude the district court did not abuse its broad discretion in denying the motion for new trial.

**III. Conclusion.**

We affirm the denial of the motion for new trial.

**AFFIRMED.**